*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

SIM ERVIN KING,

        Defendant-Appellant.

UNPUBLISHED
July 18, 2019

No. 342406
Lenawee Circuit Court
LC No. 17-018447-FC

Before: STEPHENS, P.J., and GADOLA and LETICA, JJ.

PER CURIAM.

Defendant appeals as of right his jury convictions of second-degree murder, MCL 750.317, assault with intent to commit murder, MCL 750.83, and possession of a firearm during commission of felony (felony-firearm), MCL 750.227b. The trial court sentenced defendant to 375 months to 60 years in prison for the murder conviction, and 225 months to 60 years in prison for the assault conviction, to be served concurrently, and a consecutive two-year term of imprisonment for the felony-firearm conviction. We affirm.

## I. FACTS

Defendant's convictions arise from the shooting death of William Coleman and the nonfatal shooting of Tovonte Dabney at a house party in Adrian on June 26, 2016. Before the party, defendant, Dabney, and Coleman had encountered each other at Mandy's Bar, where Coleman was involved in altercations with several customers, including defendant. After leaving the bar, the three men and several others reassembled at Shakiyla Russell's home to celebrate her birthday. The witnesses at the party agree that Coleman and Dabney were thereafter shot in the kitchen of the home.

At trial, defendant testified that he shot Coleman and Dabney as the two men entered the kitchen of Russell's home, but did so in self-defense. Although defendant denied shooting either victim in a police interview shortly after the shootings, he testified at trial that he shot the two men in the kitchen when they rushed at him, carrying guns and stating that they intended to kill him. According to defendant, Coleman dropped his gun when he entered the kitchen. Defendant picked up Coleman's gun and shot both men because he feared they were going to kill him.

-1-

Defendant testified that he fired five shots; two of the shots hit Coleman, who died as a result of the gunshot wounds. Dabney was also shot twice, but recovered.

Defendant was charged with first-degree premeditated murder, MCL 750.316(1)(a), assault with intent to commit murder, carrying a dangerous weapon with unlawful intent, MCL 750.226, carrying a concealed weapon, MCL 750.227, and felony-firearm. The jury convicted defendant of second-degree murder, assault with intent to commit murder, and felony-firearm, while acquitting defendant of first-degree premeditated murder, carrying a dangerous weapon with unlawful intent, and carrying a concealed weapon. Defendant now appeals to this Court.

## II. DISCUSSION

### A. COMPOSITION OF THE JURY VENIRE

Defendant first contends that he was denied his constitutional right to a jury drawn from a fair cross-section of the community because of the absence of African-Americans in his jury venire. "The Sixth Amendment of the United States Constitution guarantees a defendant the right to be tried by an impartial jury drawn from a fair cross section of the community." *People v Bryant*, 491 Mich 575, 595; 822 NW2d 124 (2012). To preserve a claim that a defendant was denied the right to be tried by a jury drawn from a fair cross section of the community, a defendant must object to the composition of the jury venire before the jury is empaneled and sworn. *People v Dixon*, 217 Mich App 400, 404; 552 NW2d 663 (1996). In this case, defendant did not raise this issue in the trial court until after a jury was impaneled and sworn, thereby failing to preserve this claim for review. Unpreserved claims of constitutional error are reviewed for plain error affecting substantial rights. *People v Carines*, 460 Mich 750, 763-764; 597 NW2d 130 (1999).

Preliminarily, defendant inappropriately relies on *Batson v Kentucky*, 476 US 79; 106 S Ct 1712; 90 L Ed 2d 69 (1986), in support of his argument that his Sixth Amendment rights were violated by the absence of African-Americans in his jury venire. In *Batson*, the United States Supreme Court held that the use of peremptory challenges to exclude jurors based on race violates the Equal Protection Clause. *Id.* at 89. In this case, defendant's claim of a constitutional violation is not based on the exclusion of prospective jurors by peremptory challenge, but rather on the alleged underrepresentation of African-Americans in his jury venire. Defendant's reliance on *Batson* therefore is misplaced.

In *Duren v Missouri*, 439 US 357, 364; 99 S Ct 664; 58 L Ed 2d 579 (1979), the United States Supreme Court stated:

> In order to establish a prima facie violation of the fair-cross-section requirement, the defendant must show (1) that the group alleged to be excluded is a "distinctive" group in the community; (2) that the representation of this group in venires from which juries are selected is not fair and reasonable in relation to the number of such persons in the community; and (3) that this underrepresentation is due to systematic exclusion of the group in the jury-selection process.

Our Supreme Court explained in *Bryant*, 491 Mich at 600, that *"Duren* requires a court to evaluate the composition of *venires* over a significant period rather than just the defendant's individual venire."

In the instant case, when defendant raised concerns regarding the lack of African-American venirepersons, the trial court informed counsel that there were no records regarding the race of persons called for jury duty. Defendant did not request an adjournment to pursue the issue with the jury commission. No statistical evidence was offered to the trial court as to the kind of systemic disparity addressed in *Duren*. Defendant failed to present any evidence pertaining to the jury selection procedures in Lenawee County or the racial composition of the county. He did not provide information regarding any jury venire other than his own. Accordingly, there is no factual basis for determining either that African-Americans are underrepresented in jury venires in Lenawee County, that any underrepresentation has occurred over a significant period of time, or that any underrepresentation of African-Americans was the result of systematic exclusion. Absent such evidence, there is no factual support for defendant's claim of a constitutional error. Therefore, we reject this claim of error.

## B. SUFFICIENCY OF THE EVIDENCE

Defendant next contends that the evidence was insufficient to disprove his claim of self-defense beyond a reasonable doubt. We disagree.

To determine whether a conviction is supported by sufficient evidence, we review the evidence in the light most favorable to the prosecution and consider whether there was sufficient evidence to justify a rational trier of fact in finding guilt beyond a reasonable doubt. *People v Oros*, 502 Mich 229, 239; 917 NW2d 559 (2018). The elements of a crime may be satisfactorily proven by circumstantial evidence and the reasonable inferences arising from that evidence. *Id*. Because the trier of fact determines what inferences may be fairly drawn from the evidence and the weight to be accorded those inferences, *People v Hardiman*, 466 Mich 417, 428; 646 NW2d 158 (2002), we draw all reasonable inferences and make all credibility choices in support of the jury verdict in reviewing the sufficiency of the evidence. See *Oros*, 502 Mich at 239.

The elements of second-degree murder are (1) a death, (2) caused by the defendant's act, (3) with malice, and (4) without justification or excuse. *People v Henderson*, 306 Mich App 1, 9; 854 NW2d 234 (2014). Malice can be established by demonstrating either the intent to kill, the intent to cause great bodily harm, or the intent to act with wanton and willful disregard of the likelihood that the natural result of the act is death or great bodily harm. *Id*. at 9-10. Willful and wanton disregard requires general intent only, meaning that the prosecution is not required to prove that the defendant intended the harmful result. *People v Goecke*, 457 Mich 442, 466; 579 NW2d 868 (1998). Because of the difficulty in proving an actor's intent, only minimal circumstantial evidence is necessary to show that a defendant acted with the requisite intent. *People v Stevens*, 306 Mich App 620, 629; 858 NW2d 98 (2014). The elements of assault with intent to commit murder are (1) assault, (2) the actual intent to kill, (3) which would result in murder if successful. *People v Jackson*, 292 Mich App 583, 588; 808 NW2d 541 (2011). A defendant's intent to kill may be established by inference from the facts in evidence. *Id*.

In this case, defendant contends that the evidence does not support his convictions because he shot Coleman and Dabney in self-defense. The Self Defense Act (SDA), MCL 780.972, provides, in pertinent part:

> (1) An individual who has not or is not engaged in the commission of a crime at the time he or she uses deadly force may use deadly force against another individual anywhere he or she has the legal right to be with no duty to retreat if either of the following applies:
>
> (a) The individual honestly and reasonably believes that the use of deadly force is necessary to prevent the imminent death of or imminent great bodily harm to himself or herself or to another individual.
>
> * * *
>
> (2) An individual who has not or is not engaged in the commission of a crime at the time he or she uses force other than deadly force may use force other than deadly force against another individual anywhere he or she has the legal right to be with no duty to retreat if he or she honestly and reasonably believes that the use of that force is necessary to defend himself or herself or another individual from the imminent unlawful use of force by another individual.

The defendant bears the initial burden of producing evidence of self-defense. *People v Dupree*, 486 Mich 693, 709-710; 788 NW2d 399 (2010). Once a defendant introduces evidence of self-defense, the prosecution has the burden of disproving self-defense beyond a reasonable doubt. *Id*.

Defendant's own testimony was his primary evidence in support of his self-defense theory. Defendant, however, did not relate his version of events to anyone before trial. Indeed, during his police interview, defendant denied that he entered the house or that he committed the shootings. None of the witnesses at trial corroborated defendant's testimony that Coleman and Dabney threatened to kill him, although one person present at the party, Stephen Johnson, testified that he saw Dabney and Coleman move aggressively in the direction of the kitchen as though to attack someone. None of the witnesses testified that Coleman or Dabney had a gun at the party. Gabby Vela testified that there was a gun and cocaine in the kitchen of Russell's house on the afternoon before the party when Dabney and Coleman were present, but that neither Dabney nor Coleman was holding the gun nor standing near it. Latoya Jaso testified that she was behind Coleman and Dabney as they were approaching the kitchen and did not see either of them holding a gun. No guns were found in the house when the crime scene was processed. Defendant's testimony was thus largely uncorroborated and contradicted by other witnesses' testimony and physical evidence. Defendant's credibility was also undermined by his prior inconsistent statements.

Defendant relies substantially on evidence that Coleman and Dabney were violent men who had been causing trouble throughout the day. Testimony at trial established that Coleman was involved in several altercations that evening at Mandy's Bar, including a confrontation with defendant. Dabney portrayed Coleman as impulsive and aggressive, and testified that he and

-4-

Coleman had been planning that day to retaliate against another person for a prior quarrel. Even if this testimony is credited, the prosecution presented the testimony of other witnesses that neither Dabney nor Coleman was armed or acting in a threatening manner when they approached the kitchen. Defendant's testimony that he acted in self-defense when he shot Dabney and Coleman therefore is largely uncorroborated and inconsistent. Viewed in a light most favorable to the prosecution, the evidence was sufficient to enable the jury to find beyond a reasonable doubt that Coleman and Dabney did not present an imminent threat of harm to defendant when defendant shot them.

## C. INCONSISTENT VERDICTS

Defendant next contends that his convictions must be reversed because the jury's verdict acquitting him of carrying a concealed weapon is inconsistent with its verdicts convicting him of second-degree murder, assault with intent to commit murder, and felony-firearm. We review de novo questions regarding inconsistent verdicts, which present constitutional issues. *People v Russell*, 297 Mich App 707, 722; 825 NW2d 623 (2012). Here, because defendant did not challenge the jury verdict in the trial court, this issue is unpreserved. Accordingly, our review is limited to plain error affecting defendant's substantial rights. *Carines*, 460 Mich at 763.

Generally, a jury is not prohibited from reaching inconsistent verdicts, and this Court does not interfere with the judgment of the jury. *People v McKewen*, 326 Mich App 342, 356; 926 NW2d 888 (2017). However, it is possible for inconsistent verdicts to warrant reversal if it is evident that the jury was confused or failed to understand the jury instructions. See *People v Putman,* 309 Mich App 240, 251; 870 NW2d 593 (2015). The defendant bears the burden of providing evidence of juror confusion, misunderstood instructions, or impermissible compromise. See *id*.

In this case, the jury's verdicts are not inconsistent. Although there was no dispute that defendant shot Coleman and Dabney, the evidence presented at trial demonstrates that the origin and disposition of the gun was unclear. Defendant testified that Coleman and Dabney both had guns, and that he defended himself with a gun that Coleman dropped. Dabney testified that neither he nor Coleman had a gun. Other witnesses testified that a gun was present in the house, but not in the possession of Coleman or Dabney. From this evidence, the jury could have concluded that Coleman had a gun and dropped it, but did not demonstrate any threat or intent to shoot defendant, and that defendant picked up the gun and shot Coleman and Dabney without a reasonable belief that he was in imminent danger of harm. Or the jury possibly concluded that the gun was in the kitchen when Coleman and Dabney moved toward defendant, and that defendant picked up the gun at that point and shot the two men. These views of the facts would explain the jury's conviction of defendant of second-degree murder, assault with intent to murder, and felony-firearm, but acquittal of first-degree murder, carrying a dangerous weapon with unlawful intent, and carrying a concealed weapon. Further, even if the verdicts were inconsistent, Michigan law imposes the burden on defendant to prove juror confusion, misunderstood instructions, or impermissible compromise, *id*. at 251, which defendant has failed to demonstrate in this case. Accordingly, we reject this claim of error.

## D. SENTENCE

Defendant also challenges the proportionality and constitutionality of his sentence for second-degree murder. A defendant need not take any special steps to preserve the question of the proportionality of a sentence. *People v Cain*, 238 Mich App 95, 129; 605 NW2d 28 (2000). However, to the extent that defendant also argues that his sentence is unconstitutionally cruel and unusual, because defendant did not advance this constitutional claim in the trial court, the constitutional issue is unpreserved. *People v Bowling*, 299 Mich App 552, 557; 830 NW2d 800 (2013).

The trial court's scoring of the sentencing guidelines for defendant's conviction of second-degree murder resulted in a guidelines range of 225 to 375 months or life. MCL 777.61. The trial court sentenced defendant at the top of this range to a prison term of 375 months to 60 years. Although the guidelines are only advisory, they remain a highly relevant consideration in a trial court's exercise of sentencing discretion, and a court must consult the guidelines and take them into account when imposing sentencing. *People v Lockridge*, 498 Mich 358, 364-365, 391; 870 NW2d 502 (2015).

Defendant argues that his sentence is disproportionate under *People v Milbourn*, 435 Mich 630, 636; 461 NW2d 1 (1990), which requires sentences imposed by the trial court "to be proportionate to the seriousness of the circumstances surrounding the offense and the offender." See also *People v Steanhouse*, 500 Mich 453, 460; 902 NW2d 327 (2017) (reaffirming the *Milbourn* proportionality standard as the appropriate standard for evaluating the reasonableness of a defendant's departure sentence). However, "this Court is required to review for reasonableness only those sentences that depart from the range recommended by the statutory guidelines." *People v Anderson*, 322 Mich App 622, 636; 912 NW2d 607 (2018). Under MCL 769.34(10), this Court must affirm a sentence within the appropriate guidelines range unless the trial court erred in scoring the guidelines or relied on inaccurate information in determining the defendant's sentence. *Anderson*, 322 Mich App at 636, citing MCL 769.34(10). In this case, defendant does not allege a scoring error or argue that the trial court relied on inaccurate information in determining his sentence. Accordingly, we must affirm defendant's sentence, absent any constitutional violation.

Defendant summarily asserts that his sentence is unconstitutionally cruel and unusual. The United States Constitution prohibits cruel and unusual punishment, US Const, Am VIII. This includes "a prohibition on grossly disproportionate sentences." *People v Bullock*, 440 Mich 15, 32; 485 NW2d 866 (1992). But "[a] sentence within the guidelines range is presumptively proportionate, and a proportionate sentence is not cruel or unusual." *Bowling*, 299 Mich App at 558. "In order to overcome the presumption that the sentence is proportionate, a defendant must present unusual circumstances that would render the presumptively proportionate sentence disproportionate." *Id*. (quotation marks and citation omitted).

Even if defendant is correct that his sentence was the harshest available, it is proportionate to the severity of his offenses and his background as the guidelines already take into account his lack of prior criminal history. Defendant also argues that the "combative situation" in which this offense occurred is a mitigating circumstance, rendering his sentence disproportionate. However, the only evidence of a combative situation was the testimony that

defendant offered in support of his claim of self-defense, which the jury rejected.  Accordingly, defendant has not overcome the presumptive proportionality of his sentence.  Therefore, he cannot establish that his sentence is unconstitutionally cruel and unusual.

Affirmed.


/s/ Cynthia Diane Stephens
/s/ Michael F. Gadola
/s/ Anica Letica