# S T A T E   O F   M I C H I G A N

# C O U R T   O F   A P P E A L S

---

PEOPLE OF THE STATE OF MICHIGAN,

      Plaintiff-Appellee,

v

HENRY ANDERSON,

      Defendant-Appellant.

FOR PUBLICATION
January 16, 2018
9:05 a.m.

No. 334219
Oakland Circuit Court
LC No. 2015-256384-FC

---

Before: TALBOT, C.J., and MURRAY and O'BRIEN, JJ.

PER CURIAM.

Defendant Henry Anderson appeals as of right his jury trial convictions of two counts of assault with intent to murder[1] and two counts of carrying a firearm during the commission of a felony (felony-firearm).[2] The trial court sentenced Anderson to 11 years and 6 months to 60 years' imprisonment for each assault with intent to murder conviction and a consecutive two years' imprisonment for each felony-firearm conviction. We affirm.

## I. BACKGROUND

This case arises out of an incident that occurred on July 30, 2015, at approximately 5:30 a.m. in front of Anderson's home. Victor Stinson and Joshua Harris were working for Signature Recovery Service repossessing cars and had a repossession order for a Chrysler 300 parked in Anderson's driveway. After Stinson and Harris confirmed it was the correct vehicle, they backed their tow truck up to the rear end of the Chrysler 300 and got to work quickly, using the wheel lift equipment on the tow truck to grab the back end of the Chrysler 300 so they could tow it away. While the men worked in darkness using flashlights, Anderson heard a noise that woke him up. He looked out the window and saw Stinson and Harris preparing to tow his car away. Anderson asked his wife to call 911 and went outside to confront the men, armed with a loaded handgun.

---

[1] MCL 750.83.

[2] MCL 750.227b.

-1-

Harris noticed Anderson standing on the porch wearing only his underwear and alerted Stinson. Stinson approached Anderson, introduced himself, and explained that he had a valid repossession order for the Chrysler 300. Stinson told Anderson that he would show him the documentation and started to walk toward the tow truck to get the paperwork. Harris continued securing the Chrysler 300 onto the tow truck. Instead of waiting to see the order, Anderson repeatedly told the men to "drop the car" and then brandished his weapon. Harris saw the weapon and yelled "gun" as Stinson was leaning into the cab of the tow truck to get the documentation off of a clipboard.

Harris immediately ran to the back of the tow truck to take cover. When Stinson turned around, he saw Anderson raise the weapon and then felt a bullet hit his leg and saw blood gushing out. Anderson took another shot, which hit the pavement not far from Stinson and Harris, who both saw the bullet ricochet off Anderson's driveway. Leaning on the tow truck, Stinson limped to the far side of the truck and collapsed on the grass. Harris was able to get their cell phones from the truck and attempted to call 911. Anderson walked to the back of his house, then around the side of his house, and emerged approximately 30 to 45 seconds later at the top of his driveway where he fired another shot at Stinson and Harris before retreating into his house. The entire incident was recorded on Anderson's home security system.

When the police arrived, Anderson told an officer that the men were trying to steal his car, that they had no right to take his car, and that he had a right to protect his property. Anderson acknowledged to police that Stinson and Harris were "repo guys." By contrast, Anderson testified at trial that he heard a metallic sound, believed that Stinson had a metal rod or pipe in the cab of the truck, and feared for his life when he decided to open fire. Anderson admitted to firing three shots during the incident. He also maintained that the repossession was unlawful because he was up to date on his payments and insurance. The jury convicted Anderson as charged.

## II. INEFFECTIVE ASSISTANCE OF COUNSEL

Anderson first argues that he was denied his constitutional right to the effective assistance of counsel and should be granted a new trial or an evidentiary hearing. "Whether a defendant has been denied the effective assistance of counsel is a mixed question of fact and constitutional law."[3] "Generally, a trial court's findings of fact, if any, are reviewed for clear error, and questions of law are reviewed de novo."[4] "When no *Ginther*[5] hearing has been conducted, our review of the defendant's claim of ineffective assistance of counsel is limited to mistakes that are apparent on the record."[6]

---

[3] *People v Solloway*, 316 Mich App 174, 187; 891 NW2d 255 (2016).

[4] *Id.* at 188.

[5] *People v Ginther*, 390 Mich 436, 443-444; 212 NW2d 922 (1973).

[6] *People v Mack*, 265 Mich App 122, 125; 695 NW2d 342 (2005).

To establish that his lawyer provided ineffective assistance, a defendant must show that (1) his lawyer's performance fell below an objective standard of reasonableness under prevailing professional norms, and (2) there is a reasonable probability that, but for his lawyer's deficient performance, the result of the proceedings would have been different.[7] "A reasonable probability is a probability sufficient to undermine confidence in the outcome."[8] In addition, "[e]ffective assistance of counsel is presumed, and a defendant bears a heavy burden of proving otherwise."[9] The "[d]efendant also bears the burden of establishing the factual predicate for his claim."[10]

Anderson first argues that defense counsel was ineffective for failing to request a jury instruction on the use of nondeadly force in self-defense,[11] rather than use of deadly force in self-defense.[12] In support, Anderson maintains that the evidence clearly showed that he used nondeadly force when he fired his weapon because no one died as a result of the incident. We disagree. At trial, Anderson admitted to firing three shots at Stinson and Harris who were unarmed, nonconfrontational, and simply performing the duties of their repossession jobs. Record evidence, including video surveillance footage of the incident, confirms that Anderson fired three shots in the direction of the two men during the course of the incident. One of Anderson's hollow-point rounds actually hit Stinson in the leg, causing him to collapse to the ground bleeding. While Stinson and Harris took cover behind the tow truck, Anderson had the opportunity to walk away, and in fact did, but then returned and chose to fire another shot at the men. A gun is a deadly weapon and firing a deadly weapon at other people—once or several times—undoubtedly involves the use of deadly force, as it is an act for which "the natural, probable, and foreseeable consequence . . . is death."[13] We agree with the prosecution's contention that the fact that Anderson aimed his shots poorly does not absolve him or show that he used nondeadly force. Because there was no basis for a nondeadly force instruction, trial counsel was not ineffective for failing to raise a meritless argument.[14]

---

[7] *Strickland v Washington*, 466 US 668, 688, 694; 104 S Ct 2052; 80 L Ed 2d 674 (1984); *People v Trakhtenberg*, 493 Mich 38, 51; 826 NW2d 136 (2012).

[8] *Strickland*, 466 US at 694.

[9] *People v Putman*, 309 Mich App 240, 248; 870 NW2d 593 (2015).

[10] *Id.* (quotation marks and citation omitted).

[11] CJI2d 7.22.

[12] CJI2d 7.15.

[13] See *People v Pace*, 102 Mich App 522, 534; 302 NW2d 216 (1981) (rejecting notion that deadly force requires a resulting death and holding that "deadly force has been used where the defendant's acts are such that the natural, probable, and foreseeable consequence of said acts is death.").

[14] *People v Ericksen*, 288 Mich App 192, 201; 793 NW2d 120 (2010) ("Failing to advance a meritless argument or raise a futile objection does not constitute ineffective assistance of counsel.").

Next, Anderson argues that trial counsel was ineffective for failing to argue that the repossession men had breached the peace. Anderson contends that the self-help repossession statute, MCL 440.9609, provides that a secured party may take possession of collateral without judicial process if it proceeds without breach of the peace. Anderson's argument fails because he has not met his burden to establish the factual predicate for his claim.[15] The record evidence shows that Stinson and Harris had a valid repossession order for Anderson's vehicle, and in executing the directives of that order, Stinson and Harris worked swiftly, quietly, and under cover of darkness specifically to lessen the chances of confrontation with Anderson. To the extent that a breach of the peace occurred, it was a result of Anderson's decision to shoot at the victims, rather than any conduct on the part of Stinson or Harris. As such, Anderson's argument fails. Once again, trial counsel was not ineffective for failing to raise a meritless argument.[16]

Anderson next argues that trial counsel failed to investigate Anderson's neighbors to determine whether they saw anything and or his credit union to verify that the repossession was unlawful. The failure to reasonably investigate a case can constitute ineffective assistance.[17] However, Anderson's argument fails because, once again, he has not established the factual predicate for his claim.[18] Anderson provides no evidence in support of his assertions. On the record before the Court, it is just as likely that defense counsel did investigate these potential witnesses but found that their testimony would not be useful. With regard to the neighbors, Anderson ignores the video evidence of the incident captured by his own home security system, which supported the victims' version of the events. With regard to the validity of the repossession order, Harris testified that the police allowed him to tow the vehicle away after the incident. This evidence clearly supported the conclusion that the repossession order was valid. Because there is no available record that would establish that trial counsel failed to interview or investigate potentially helpful witnesses, Anderson's claim necessarily fails.

Furthermore, "[t]he failure to call witnesses only constitutes ineffective assistance of counsel if it deprives the defendant of a substantial defense. Similarly, [t]he failure to make an adequate investigation is ineffective assistance of counsel if it undermines confidence in the trial's outcome."[19] Anderson fails to explain how counsel's alleged failure to interview neighbors and credit union employees deprived him of either a substantial defense or evidence that could have been helpful to the defense. There is no basis for concluding that defense counsel failed to subject the prosecution's case to meaningful adversarial testing. Even assuming that Anderson's counsel did not investigate and interview witnesses, the record discloses that counsel extensively cross-examined the witnesses at trial and moved for a directed verdict,

---

[15] *Putman*, 309 Mich App at 248.

[16] *Ericksen*, 288 Mich App at 201.

[17] *People v McGhee*, 268 Mich App 600, 626; 709 NW2d 595 (2006).

[18] *Putman*, 309 Mich App at 248.

[19] *People v Russell*, 297 Mich App 707, 716; 825 NW2d 623 (2012) (quotation marks and citation omitted) (second alteration in original).

arguing that the prosecutor failed to offer sufficient evidence to present certain charges to the jury. Anderson's argument therefore fails.

## III. GREAT WEIGHT OF THE EVIDENCE

Anderson next contends that his convictions must be overturned because the jury's verdict was against the great weight of the evidence. "The test to determine whether a verdict is against the great weight of the evidence is whether the evidence preponderates so heavily against the verdict that it would be a miscarriage of justice to allow the verdict to stand."[20] When a defendant claims on appeal that his convictions were against the great weight of the evidence,

> "[c]onflicting testimony, even when impeached to some extent, is an insufficient ground for granting a new trial." "[U]nless it can be said that directly contradictory testimony was so far impeached that it 'was deprived of all probative value or that the jury could not believe it,' or contradicted indisputable physical facts or defied physical realities, the trial court must defer to the jury's determination."[21]

Additionally, "[i]t is the province of the jury to determine questions of fact and assess the credibility of witnesses."[22]

To prove assault with intent to murder, the prosecution must show that a defendant committed: "(1) an assault, (2) with an actual intent to kill, (3) which, if successful, would make the killing murder."[23] Anderson argues that his convictions for assault with intent to murder were contrary to the great weight of the evidence, which clearly reflected that he did not have the intent to murder. According to Anderson, the evidence demonstrated that he reasonably acted in self-defense when confronted with unknown individuals in the dark who were in possession of tools he perceived to be weapons. In essence, Anderson urges this Court to conclude that his version of events was more credible than the evidence offered by the prosecution. We decline to do so.

"This Court has consistently observed that 'because of the difficulty of proving an actor's state of mind, minimal circumstantial evidence is sufficient.' "[24] Additionally, the weight and credibility of evidence, and the inferences to be drawn from the evidence, are matters for the jury to resolve.[25] In this case, there was sufficient evidence that Anderson acted with the requisite intent to kill and the great weight of the evidence did not support Anderson's claim of self-

---

[20] *People v Musser*, 259 Mich App 215, 218-219; 673 NW2d 800 (2004).

[21] *Id*. at 219 (citations omitted).

[22] *People v Lemmon*, 456 Mich 625, 637; 576 NW2d 129 (1998).

[23] *People v Warren (After Remand)*, 200 Mich App 586, 588; 504 NW2d 907 (1993).

[24] *Ericksen*, 288 Mich App at 196-197 (citation omitted).

[25] *People v Unger*, 278 Mich App 210, 228-229; 749 NW2d 272 (2008).

defense. Anderson fired a total of three shots at close range in Stinson and Harris's direction using hollow-point bullets, which are designed to cause additional damage after striking a target. Further, after firing the first two shots, Anderson walked around his house and then emerged at the top of the driveway, aimed, and fired a third shot toward Stinson and Harris while they were both hiding behind the tow truck. Stinson had already been struck by the first bullet and was laying on the ground, bleeding and unable to walk. While Anderson's own testimony suggested he was in fear of imminent harm from Stinson and Harris, the balance of the evidence negated his assertion. Anderson's home security system captured the entire incident on video and supported the victims' version of the incident. Neither Stinson nor Harris were armed and neither victim took any sort of hostile action toward Anderson. Furthermore, when Anderson first spoke to the police after the incident, he acknowledged that he understood Stinson and Harris were "repo guys" and made no mention of seeing either victim with a weapon or being in fear for his life. It is clear from its verdict that the jury did not find Anderson's testimony or self-defense claim credible and, having reviewed the record, the jury's verdict was not contrary to the great weight of the evidence.

## IV. SENTENCING

Finally, Anderson argues that he is entitled to resentencing because Offense Variable (OV) 6 was erroneously scored and because the sentences he received were unreasonable. "To preserve a sentencing issue for appeal, a defendant must raise the issue 'at sentencing, in a proper motion for resentencing, or in a proper motion to remand filed in the court of appeals.' "[26] Anderson raised a challenge to the scoring of OV 6 at sentencing, but he did not object to his sentences on the basis that they were unreasonably excessive. Therefore, Anderson's challenge to the scoring of OV 6 is preserved but his challenge to the reasonableness of his sentence is unpreserved.

In reviewing a trial court's calculation of a defendant's sentencing guidelines score, this Court reviews factual determinations for clear error, which must be supported by a preponderance of the evidence.[27] "Whether the facts, as found, are adequate to satisfy the scoring conditions prescribed by statute, i.e., the application of the facts to the law, is a question of statutory interpretation, which an appellate court reviews de novo."[28] To the extent that this issue is unpreserved, our review is limited to plain error affecting substantial rights.[29] "To establish entitlement to relief under plain-error review, the defendant must establish that an error occurred, that the error was plain, i.e., clear or obvious, and that the plain error affected substantial rights."[30]

---

[26] *People v Clark*, 315 Mich App 219, 223; 888 NW2d 309 (2016), quoting MCR 6.429(C).

[27] *People v Schrauben*, 314 Mich App 181, 196; 886 NW2d 173 (2016).

[28] *People v Hardy*, 494 Mich 430, 438; 835 NW2d 340 (2013).

[29] *People v Lockridge*, 498 Mich 358, 392; 870 NW2d 502 (2015).

[30] *Id*. at 392-393.

Anderson argues that the trial court erred by assessing 25 points for OV 6 (intent to kill or injure). Pursuant to MCL 777.36(1)(b), 25 points should be assessed for OV 6 if "[t]he offender had unpremeditated intent to kill, the intent to do great bodily harm, or created a very high risk of death or great bodily harm knowing that death or great bodily harm was the probable result." A sentencing judge is directed to "score this variable consistent with a jury verdict unless the judge has information that was not presented to the jury."[31]

Anderson admits in his brief on appeal that the trial court's assessment of 25 points was consistent with the jury's verdict in this case. Nonetheless, he argues that OV 6 should not have been scored at 25 points because the trial court had information that was not presented to the jury. Specifically, Anderson asserts that the trial court was aware that Anderson was 70 years old, had no prior record, and was living a productive and law-abiding life. Anderson further asserts that the trial court had broad discretion and should have considered these factors as well as the fact that the offense was completely out of character. We disagree. The directive set forth in MCL 777.36(2)(a) dictates how the sentencing guidelines should be scored and is unambiguous. "If the statute's language is clear and unambiguous, we assume that the Legislature intended its plain meaning and we enforce the statute as written."[32] The plain language of MCL 777.36(2)(a) permits the sentencing court to consider information that was not presented to the jury, but nothing in the statutory language suggests that the court should take into account information that is not relevant to the variable in question. The information Anderson points to in this case is irrelevant to the scoring of OV 6, because Anderson's age, health, family status, and lack of a criminal record have no bearing whatsoever on Anderson's intent at the time he decided to open fire on Stinson and Harris. For these reasons, the trial court did not err with respect to OV 6.

Finally, Anderson argues that the sentences he received were unreasonably excessive. Anderson contends that the trial court should have taken into account the fact that, at the time of sentencing, he was 70 years old, married with four children, dealing with health issues, and caring for a dependent wife. The guidelines range for Anderson's assault with intent to murder convictions was 126 to 210 months in prison. The trial court sentenced Anderson at the low end of this range, imposing minimum sentences of 138 months' imprisonment for Anderson's assault with intent to murder convictions.

According to *People v Lockridge*,[33] this Court is required to review for reasonableness only those sentences that depart from the range recommended by the statutory guidelines. Because the trial court sentenced Anderson within the applicable sentencing guidelines range, this Court need not evaluate Anderson's sentence for reasonableness and must affirm his sentence unless there was an error in the scoring or the trial court relied on inaccurate

---

[31] MCL 777.36(2)(a).

[32] *People v Weeder*, 469 Mich 493, 497; 674 NW2d 372 (2004).

[33] *Lockridge*, 498 Mich at 365.

information.[34]  For the reasons already explained, Anderson has not demonstrated any error in the calculation of his sentencing guidelines range.  Likewise, there is no indication that the trial court sentenced Anderson on the basis of inaccurate information.  Indeed, it is evident that each of the factors Anderson points to on appeal as justifying a reduced minimum sentence were known to the trial court, as they were identified in Anderson's presentence investigation report or otherwise discussed at sentencing.  Accordingly, Anderson is not entitled to resentencing.

Affirmed.

/s/ Michael J. Talbot
/s/ Christopher M. Murray
/s/ Colleen A. O'Brien

---

[34] See *Schrauben*, 314 Mich App at 196 ("When a trial court does not depart from the recommended minimum sentencing range, the minimum sentence must be affirmed unless there was an error in scoring or the trial court relied on inaccurate information."), citing MCL 769.34(10).