*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

CHARLES MARION BROWN,

Defendant-Appellant.

UNPUBLISHED
February 11, 2020

No. 345404
Wayne Circuit Court
LC No. 17-010798-01-FC

Before: MURRAY, C.J., and SWARTZLE and CAMERON, JJ.

PER CURIAM.

During a jury trial, a shooting victim identified defendant as the person who robbed and shot her. Before trial, defendant had moved to suppress the victim's in-court identification, arguing that her out-of-court identification of him was based on an improperly suggestive photographic array. After an evidentiary hearing, the trial court denied the motion. On appeal, defendant challenges the admissibility of the victim's in-court identification, as well as the sentence imposed by the trial court. We affirm.

## I. BACKGROUND

In the early hours of November 17, 2017, the victim was standing on a street corner in Detroit, Michigan. A red Yukon SUV pulled up, two males got out, and they demanded the victim's purse. One of the men was wearing a mask that covered his face from the nose down. The victim dropped her purse, and the two men told her to run. As she was running, one of the men shot her in the back and the arm. The shot to the victim's back caused paralysis in her legs.

Detroit Police Department (DPD) Officer Timothy Jones testified that he and his partner, DPD Officer Brent Suhr, received a report of a shooting from which the perpetrators fled in a red Yukon. Officer Jones saw a vehicle matching this description near the crime scene. He attempted to stop the Yukon, but it accelerated down a residential street at a speed greatly exceeding the speed limit. Officer Jones testified that he called off the chase for safety reasons. At this point, officers in a different patrol car saw the Yukon and gave chase. Officer Jones and his partner then rejoined the pursuit. According to Officer Jones, the Yukon traveled through a park, knocked over a pole, lost traction, and swerved, eventually stopping on a sidewalk.

-1-

Jujuan Williams, defendant, and possibly one other person exited the Yukon. Williams laid on the ground following the officers' orders, but defendant ran away. Williams provided officers with defendant's identity and stated that defendant was the person who shot the victim. Officer Suhr recovered a semi-automatic rifle with an attached scope that was thrown from the Yukon. Officers subsequently located defendant at a residence in Detroit and arrested him.

Following the preliminary examination, defendant filed a motion to suppress the victim's potential in-court identification of him as the person who shot her. Defendant argued that the victim's out-of-court identification of defendant was based on an improperly suggestive photographic array. The trial court held an evidentiary hearing in connection with defendant's motion, at which it received testimony regarding the photographic array.

DPD Officer Marvin Anthony testified he generated a photographic array by means of a computer dubbed the "mug machine." He entered into the computer some of defendant's physical characteristics, including his hairstyle, complexion, eye color, gender, and ethnicity. Officer Anthony did not enter age, height, or facial hair, and he testified that the entry of facial hair was not an available option. He also stated that the victim was not sure if defendant had facial hair because he was wearing a mask. Because of the use of a mask, Officer Anthony was more concerned with features from the nose up when he developed the photographic array.

Based on the data he entered, the computer generated at least 100 mugshots of persons that had characteristics similar to defendant's. Officer Anthony explained that he personally compared the generated photographs to defendant's appearance. He then chose five photographs of men whom he believed appeared similar to defendant. Defendant's photograph was number six in the array, and he was pictured before a "half white" background. Four of the remaining five photographs had gray backgrounds. The last photograph had a full white background. Officer Anthony testified that he was concerned with choosing photographs of persons with similar physical characteristics rather than matching the backgrounds.

Officer Anthony showed the victim the photograph array on November 20, 2017, while she was still in the hospital. The victim identified defendant in the photograph array in less than a minute.

After receiving this testimony at the evidentiary hearing, the trial court denied the motion to suppress the victim's in-court identification of defendant, stating:

> So, the issue basically becomes whether or not there was a basis by which this Court should exclude the photo array.
>
> I'm more than satisfied that there was an independent basis . . . . I believe that the officer exercised due diligence in trying to find an array that adequately, you know, displayed the different characteristics. And the fact of the matter is that the complainant was in fact hospitalized and had severe injuries. And, more importantly, had . . . the witness not identified the defendant, the defendant could have been released from custody.

I believe that the officers did what they could in an expeditious manner. And I do not find that it was impermissibly suggestive.

And, so, at this point, the Court is going to deny the request to conduct a *Wade* Hearing. [A]nd/or to suppress the identification of the out-of-court identification.

At trial, the victim testified that she picked defendant out of a photographic array because she "remembered the hair and the face," specifically the "eyes and nose area" above his mask. She confirmed that there was no doubt in her mind that she picked defendant out of the photographic array because she remembered him. She also testified that police officers told her that they had someone in custody while she was viewing the array, but denied that the officers told her that person was in the array. She further testified that police officers never told her which person to pick out.

The victim further testified she got a good look at the portion of the perpetrator's face that was not covered by the mask; she was focused on him because he was the person holding the rifle and because he directed her to look at him. The victim testified that she did not know the man before the robbery, but she remembered his face because of how strong it was. She testified that the perpetrator did not pull down his mask during the robbery, but also admitted that she testified inconsistently at the preliminary examination.

A video recorded by a security camera near the scene of the crime that captured the entire incident was admitted into evidence. Narrating as the video was played, the victim identified defendant as the person seen in the video holding a rifle.

The jury convicted defendant of assault with intent to murder (AWIM), MCL 750.83, armed robbery causing serious injury, MCL 750.529, fourth-degree fleeing and eluding, MCL 257.602a, felon in possession of a firearm (felon-in-possession), MCL 750.224f, and possession of a firearm during the commission of a felony (felony-firearm), MCL 750.227b.

At sentencing, the trial court stated its observation that defendant did not show any remorse for the shooting, and noted that defendant was cursing at the prosecutor and the trial court at the end of the trial. The trial court stated that defendant shot the victim for no apparent reason after she dropped her purse and was running away. It stated that defendant was placed on probation only six months before he committed this crime, and observed, "So he walked out of the courtroom and got a gun and started going out there and robbing people." The trial court continued: "He has no reason to be on the street because he is a predator. You know, there was no reason for him to do this. And even now, he sits there and smirks as though this is all about nothing. So I don't have any mercy on him."

The trial court sentenced defendant to 30 to 50 years in prison for the AWIM and armed-robbery convictions, 1 to 2 years in prison for the fleeing and eluding conviction, 2 to 5 years in prison for the felon-in-possession conviction, and 2 years in prison for the felony-firearm conviction.

-3-

This appeal followed.

## II. ANALYSIS

## A. PHOTOGRAPHIC ARRAY

On appeal, defendant first argues that he was denied due process because the photograph array was unduly suggestive, and therefore, the trial court erred in not granting his motion to suppress the victim's in-court identification. Defendant's argument is without merit.

A trial court's decision to admit identification evidence will not be reversed unless it is clearly erroneous. *People v Kurylczyk*, 443 Mich 289, 303; 505 NW2d 528 (1993). "Clear error exists when the reviewing court is left with the definite and firm conviction that a mistake has been made." *Id*. The fairness of an identification procedure is evaluated in light of the totality of the circumstances. *People v Lee*, 391 Mich 618, 626; 218 NW2d 655 (1974). Relevant factors include the opportunity of the witness to view the perpetrator at the time of the crime, the witness's degree of attention, the accuracy of the witness's prior description of the perpetrator, the level of certainty demonstrated by the witness at the confrontation, and the length of time between the crime and the confrontation. *Kurylczyk*, 443 Mich at 306.

To sustain a due-process challenge to a photographic array, a defendant must show that the pretrial-identification procedure array was so suggestive in light of the totality of the circumstances that it led to a substantial likelihood of misidentification. *Id.* at 302. "The test is the degree of suggestion inherent in the manner in which the suspect's photograph is presented to the witness for identification." *Lee*, 391 Mich at 626. Further, the test is not whether the photographic array was suggestive, but whether it was *unduly* suggestive in light of all of the circumstances surrounding the identification. *Kurylczyk*, 443 Mich at 306. A photographic array may be unduly suggestive if it causes a witness to select a defendant based on external characteristics rather than on the defendant's looks. *Id*. at 305. A photograph array may also be unduly suggestive if the witness is told that the police have the correct person in custody or if the witness is shown an array in which the defendant is singled out in some way. *People v Gray*, 457 Mich 107, 111; 577 NW2d 92 (1998).

Generally, however, a photographic array is not unduly suggestive "so long as it contains some photographs that are fairly representative of the defendant's physical features and thus sufficient to reasonably test the identification." *Kurylczyk*, 443 Mich at 304 (cleaned up). "Thus, differences in the composition of photographs, in the physical characteristics of the individuals photographed, or in the clothing worn by a defendant and the others pictured in a photographic lineup have been found not to render a lineup impermissibly suggestive." *Id*. at 304-305.

Defendant claims the photographic array prepared by Officer Anthony was impermissibly suggestive because defendant has more facial hair than the others pictured in the array. Defendant's argument is without merit. Officer Anthony explained that the computer program used did not provide an option for identifying subjects with facial hair. Regardless, the evidence indicated that the perpetrator wore a mask from the nose down, and thus, his facial hair could not have been a physical characteristic that the victim relied on in identifying defendant. In fact, the victim testified at trial that she focused on the perpetrator's eyes, nose, and hair because he was

wearing a mask. And as the Michigan Supreme Court recognized, differences in the physical characteristics of the individuals photographed have been determined not to create undue suggestion. *Id.* at 304-305, citing in part *People v Richmond*, 84 Mich App 178, 181; 269 NW2d 521 (1978) (concluding the photographic array was not impermissibly suggestive despite the fact that some persons in the array had facial hair while the defendant was clean shaven).

Defendant also argues that the difference in the background color of defendant's photograph made the array unduly suggestive. Defendant's argument is without merit. Again, our Supreme Court stated that differences in the composition of photographs in an array have been determined not to be unduly suggestive. *Id.* at 304-305. In this case, the grayscale difference (amount or intensity of light) in the backgrounds is a compositional difference that does not render the array unduly suggestive. Moreover, as this Court has explained, "Mug shots are necessarily produced under widely differing circumstances of light and background, using various kinds of equipment." *People v Wilson (On Rehearing)*, 96 Mich App 792, 799; 293 NW2d 710 (1980) (cleaned up). And the victim testified that she chose defendant from the array because of his eyes, hair, and nose, which do not relate to the composition of the background color for the photographs in the array.

Defendant also argues that the array was unduly suggestive because police told the victim that they had someone in custody when they showed her the array. Although the victim testified that police told her that they had someone in custody, she denied that police indicated that the person in custody was the shooter or that the person's photograph was in the array. Thus, this statement was not unduly suggestive.

Regarding the opportunity of the victim to view defendant at the time of the crime and her degree of attention, the victim stated that defendant demanded that she look at him. She also stated that she was focused on him because he was holding the rifle, and that she got a "good visual" because defendant had "a strong face." Regarding the victim's level of certainty, she testified that there was "no doubt in [her] mind" that she picked out defendant in the array because she remembered him. And regarding the length of time between the crime and showing the victim the array, the record shows that Officer Anthony showed the victim the array only three days after the robbery and shooting.

Officer Anthony designed the array to include photographs of men with similar physical characteristics similar to those of defendant. The array itself shows that the physical characteristics of the men chosen were "fairly representative" of defendant's physical characteristics, and thus, were "sufficient to reasonably test the identification." *Kurylczyk*, 443 Mich at 304. The array was shown to the victim three days after the robbery and shooting, and she stated that she had no doubts as to her identification of defendant. Despite the difference in background and facial hair, the totality of the circumstances supports the trial court's conclusion that the photograph array was not so suggestive that it led to a substantial likelihood of misidentification. *Id.* at 302. Evaluating the evidence in the light of the totality of the circumstances, we cannot say that the trial court clearly erred in determining that the photographic array was not unduly suggestive. Accordingly, the trial court properly denied defendant's motion to suppress the victim's in-court identification of him as the person who robbed and shot her.

## B. SENTENCING

Defendant next argues that the trial court imposed an unreasonable and disproportionate sentence. He additionally argues that his trial counsel was ineffective for failing to object to the reasonableness and proportionality of his sentence.

## 1. STANDARD OF REVIEW

"To preserve a sentencing issue for appeal, a defendant must raise the issue at sentencing, in a proper motion for resentencing, or in a proper motion to remand" filed in this Court. *People v Anderson*, 322 Mich App 622, 634; 912 NW2d 607 (2018) (cleaned up). This includes an issue regarding the reasonableness of a sentence. *Id*. In this case, defendant did not raise the issue of his sentence being unreasonable and disproportionate. Thus, the issue is not preserved for appeal.

A claim of ineffective assistance of counsel is preserved by moving for a new trial or a *Ginther* hearing. *People v Payne*, 285 Mich App 181, 188; 774 NW2d 714 (2009). In this case, defendant did not bring either a motion for a new trial or a motion to remand for a *Ginther* hearing. Thus, the issue is unpreserved.

This Court reviews unpreserved claims for plain error affecting a defendant's substantial rights. See *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999). Plain error requires showing that (1) error occurred, (2) the error was clear or obvious, and (3) the error affected defendant's substantial rights. *Id*. at 763. The third requirement generally requires showing that the error affected the outcome of the lower court proceedings. *Id*. Reversal is warranted only when the plain error "resulted in the conviction of an actually innocent defendant or when an error seriously affected the fairness, integrity, or public reputation of the judicial proceeding independent of the defendant's innocence." *Id*. (cleaned up).

## 2. DISPROPORTIONATE SENTENCE

A sentence is reasonable if it adheres to the principle of proportionality set forth in *People v Milbourn*, 435 Mich 630; 461 NW2d 1 (1990). *People v Lampe*, 327 Mich App 104, 126; 933 NW2d 314 (2019). "That is, sentences imposed by a trial court must be proportionate to the seriousness of the circumstances surrounding the offense and the offender." *Id*. at 125 (cleaned up). A sentence outside of the guidelines range "may be imposed when the trial court determines that the recommended range under the guidelines is disproportionate, in either direction, to the seriousness of the crime." *Id*. at 126 (cleaned up). The trial court may consider the following factors in crafting a proportionate sentence:

> (1) the seriousness of the offense; (2) factors that were inadequately considered by the guidelines; and (3) factors not considered by the guidelines, such as the relationship between the victim and the aggressor, the defendant's misconduct while in custody, the defendant's expressions of remorse, and the defendant's potential for rehabilitation. [*Id*. (cleaned up).]

In addition, a trial court must explain why a departure sentence "is more proportionate to the offense and the offender than a different sentence would have been." *Id*. at 126-127 (cleaned up).

Defendant does not challenge the trial court's scoring of the offense variables or prior-record variables. As scored, the applicable sentencing-guidelines range was 171 to 285 months. The trial court departed from the guidelines range and sentenced defendant to a term of 360 to 600 months in prison for the AWIM and armed-robbery convictions. In sentencing defendant, the trial court stated that defendant did not show any remorse. In fact, the trial court noted that defendant expressed quite the opposite as he sat through sentencing and smirked "as though this [was] all about nothing." The trial court also explained that defendant shot the victim for no apparent reason after she dropped her purse and began to run away. Additionally, the trial court noted that defendant was placed on probation only six months before he committed this crime. The trial court indicated its belief that defendant was a predator and that, as soon as he was placed on probation, he "got a gun and started going out there and robbing people." We conclude that the trial court considered appropriate factors in crafting a sentence that was outside of the guidelines range, and it justified its reasons for doing so. Furthermore, the extent of the departure was reasonable and proportionate given the circumstances cited. Therefore, defendant has not demonstrated plain error affecting his substantial rights.

## 3. INEFFECTIVE ASSISTANCE OF COUNSEL

Defendant next argues that his trial counsel was ineffective for failing to object to the reasonableness and proportionality of his sentence. Defendant correctly notes that his counsel did not object at sentencing to the reasonableness or proportionality of the sentence imposed by the trial court. Had defense counsel done so, the trial court would have been required to discuss its reasons for departing from the guidelines range. As discussed earlier, the trial court did in fact state on the record its reasons for departure. Furthermore, the trial court's departure sentence was reasonable and proportionate to the circumstances and this defendant. Thus, any objection to proportionality and reasonableness would have been futile, and defendant is not entitled to relief on this issue. *People v Ericksen*, 288 Mich App 192, 201; 793 NW2d 120 (2010) ("Failing to advance a meritless argument or raise a futile objection does not constitute ineffective assistance of counsel.").

Affirmed.

Christopher M. Murray
Brock A. Swartzle
Thomas C. Cameron