*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

UNPUBLISHED
February 25, 2025
9:56 AM

Plaintiff-Appellee,

v

No. 369753
Macomb Circuit Court
LC No. 2023-000744-FH

CHRISTY LOVE COATES,

Defendant-Appellant.

Before: YATES, P.J., and LETICA and N. P. HOOD, JJ.

PER CURIAM.

Defendant, Christy Love Coates, appeals as of right her sentence following her jury trial conviction of driving while her license was revoked or suspended (DWLS), second offense, MCL 257.904(1).[1] The prosecution also charged Coates with carrying a concealed weapon (CCW), MCL 750.277, but the jury found her not guilty of the CCW charge. During the trial, Coates espoused pseudolegal ideas that she believed justified her driving without a license. There was a presumption for a nonjail, nonprobation sentence. See MCL 769.5(3). But the trial court sentenced Coates to 93 days in jail with credit for 11 days served for her DWLS conviction. When imposing the sentence, the court expressed the view that Coates was "brainwashed" by the "sovereign citizen movement" and referenced the firearms charge for which she was acquitted. Because the trial court failed to address how the departure sentence was proportionate to the offense conduct (i.e., driving without a license), we vacate Coates's sentence and remand to the trial court for resentencing.

## I. BACKGROUND

This case arises from a traffic stop in November 2022. A police officer from the Warren Police Department testified that he stopped Coates for having an excessive window tint. During

---

[1] Although we commonly refer to offenses under MCL 257.904(1) as driving while license suspended or DWLS, the offense also encompasses individuals who have never applied for a license, see MCL 257.904(1), which was the theory of the case here.

the stop, he located a pistol and separately two magazines with ammunition. At trial, through the police-officer witness, the prosecution introduced Coates's driving record that showed that Coates did not have a valid driver's license on the date of the stop. In fact, she had never had a valid driver's license.

At trial, Coates testified on her own behalf. She acknowledged that she drove her car the day of the traffic stop knowing that she did not have a driver's license. Coates believed she did not need one to drive her personal car. She distinguished "traveling" from "driving," explaining that traveling involves one's personal car and is permitted without a license, whereas driving involves a commercial vehicle and requires a license. Coates stated that her beliefs regarding this distinction came from her research of United States Supreme Court precedent. She testified that she previously attempted to get her driver's license but was told she could not obtain one until she paid off several tickets, which she was in the process of paying at the time of trial. Coates stated that she would get her driver's license "if it's the right thing" once she finished "studying." When asked if she would continue to drive a car, Coates stated: "I don't drive; I travel." She emphasized that she did not necessarily wish to disobey the law; rather, she was doing what she felt was best or right for her "and other people like [her]."

As stated, the jury acquitted Coates of CCW and found her guilty of DWLS. Because the jury convicted her only of the misdemeanor, Coates remained on bond pending sentencing. She failed to appear for the original sentencing date in November 2023. Following the issuance of a bench warrant, the trial court sentenced her in January 2024.

At sentencing, the prosecution requested that the trial court sentence Coates to one year in jail, the statutory maximum, see MCL 257.904(3)(b). According to the prosecutor, her testimony at trial demonstrated that Coates believed she was exempt from abiding by Michigan law, would not get a driver's license after trial, and would not be rehabilitated. The prosecutor repeatedly referred to the CCW charge for which the jury found Coates not guilty and emphasized his disagreement with the jury's verdict as to that count. At one point, the prosecutor went so far as to state that "the Warren Police Department would have had to give her gun back[,] so presumably she's carrying a gun now without a license."[2] However, both the prosecutor and the trial court acknowledged that the trial court needed to sentence Coates only for the misdemeanor DWLS conviction.

Defense counsel stated that he believed Coates understood her responsibility relative to obtaining a license. He emphasized the she had paid fines and costs of outstanding tickets that she had accumulated.

Before turning to Coates for allocution, the trial court confirmed with the probation agent present that the sentencing offense was a nonserious misdemeanor. The trial court also confirmed with the prosecutor that Coates originally failed to appear for sentencing in November 2023, resulting in a bench warrant. The trial court stated, "I had to chase her down, get the bondsmen, bench warrant, so it's - this further . . . contempt of the law, contempt of the Court like the rules

---

[2] To be clear, a license is required to carry a *concealed* pistol.

don't apply to her. That's the impression that we're getting. You can address the Court if you wish, ma'am."

Coates then spoke on her own behalf. She stated that she never said the rules did not apply to her. She disputed the prosecutor's characterization of her trial testimony. And she explained:

> I did talk to the attorney and I said that I did pay the fines and costs for me to get my license. I had a paper that the Secretary of State gave me to pay in order for me to get my license and they told me I couldn't get it until 2024. It's 2024 now so I should be able to get my license.

The trial court sentenced Coates to 93 days in jail with 11 days credit, "finding compelling reasons to go beyond fines and costs." Before pronouncing sentence, the trial court acknowledged that Coates was a "nice, young lady" with no prior criminal history,[3] then stated:

> I feel—I feel like you've been brainwashed by somebody that's telling you about this sovereign citizen movement and it's at your own detriment because there's no reason you can't follow the law. There's no reason even if you wanted to carry a gun you couldn't get the lawful permit to carry a gun, but you're not being sentenced on that. Same as a license. These are rules of orality [sic] society. You must abide—abide by them. You've shown that you haven't and the Court bases this on—on the testimony of course and the conviction of the jury. You've further shown, I agree with the Prosecutor, that there's no likelihood that you will so the only thing left is punishment.

Nonetheless, as stated, the trial court sentenced Coates to 93 days in jail.

Coates successfully moved for an appellate bond. This appeal followed.

## II. STANDARDS OF REVIEW

"A criminal defendant need not take any special steps to preserve the question of the proportionality of her sentence." *People v Foster*, 319 Mich App 365, 375; 901 NW2d 127 (2017). This aspect of her issue is therefore reviewable. "Sentencing decisions are reviewed for an abuse of discretion." *People v Boykin*, 510 Mich 171, 182; 987 NW2d 58 (2022). "A given sentence constitutes an abuse of discretion if that sentence violates the principle of proportionality[.]" *People v Lydic*, 335 Mich App 486, 500; 967 NW2d 847 (2021) (quotation marks and citation omitted). We review matters of statutory interpretation de novo. *Boykin*, 510 Mich at 183.

## III. LAW AND ANALYSIS

---

[3] Coates had at least one prior misdemeanor conviction of DWLS.

Coates first argues that the trial court abused its discretion by departing from the presumption for a nonjail, nonprobationary sentence for a nonserious misdemeanor conviction because the trial court failed to provide reasonable grounds for the departure sentence. We agree.

"Unlike cases involving felony convictions, there are no sentencing guidelines that a sentencing court must consult when sentencing a person convicted of only a misdemeanor offense." *People v Mason*, ___ Mich App ___, ___; ___ NW3d ___ (2024) (Docket No. 367687); slip op at 3. However, MCL 769.5 provides, in relevant part:

> (3) There is a rebuttable presumption that the court shall sentence an individual convicted of a misdemeanor, other than a serious misdemeanor, with a fine, community service, or other nonjail or nonprobation sentence.

> (4) The court may depart from the presumption under subsection (3) if the court finds reasonable grounds for the departure and states on the record the grounds for the departure. [MCL 769.5(3) and (4).]

Taken together, MCL 769.5(3) and MCL 769.5(4) "establish a sentencing framework for misdemeanor convictions that is similar to the framework for felony convictions and the legislative sentencing guidelines." *Mason*, ___ Mich App at ___; slip op at 4.

The principle of proportionality requires the trial court to impose sentences that are "proportionate to the seriousness of the circumstances surrounding the offense and the offender." *Lydic*, 335 Mich App at 501 (quotation marks and citation omitted). A nonjail sentence for a defendant convicted of a nonserious misdemeanor is presumptively proportionate. See *Mason*, ___ Mich App at ___; slip op at 4 ("[A] nonjail or nonprobation sentence imposed on an individual convicted of a misdemeanor, other than a serious misdemeanor, pursuant to MCL 769.5(3) is a presumptively proportionate sentence, as a within-guidelines sentence is for a felony conviction.") (quotation marks omitted). As noted, MCL 769.5(4) allows a trial court to impose a departure sentence "if the court finds reasonable grounds for the departure and states on the record the grounds for the departure." MCL 769.5(4). "In imposing an out-of-guidelines sentence, a trial court must justify the sentence imposed in order to facilitate appellate review, which includes an explanation of why the sentence imposed is more proportionate to the offense and the offender than a different sentence [i.e., one within the guidelines] would have been." *Lydic*, 335 Mich App at 500-501 (quotation marks and citation omitted; alteration in original).

In *Mason*, the defendant pleaded guilty to DWLS, and the district court sentenced him to 93 days in jail. *Mason*, ___ Mich App at ___; slip op at 1. This Court vacated the departure sentence and remanded to the district court for resentencing. *Id.* at 1. The *Mason* Court explained that, although the record demonstrated that the district court considered the defendant's criminal history during sentencing, the district court "should also have weighed the seriousness of the offense." *Id.* at 5. According to the *Mason* Court, "[j]ust like in the context of sentencing guidelines, the district court was obligated to explain why a departure sentence of 93 days in jail was more suitable than a nonjail or nonprobationary sentence under MCL 769.5(3)." *Id.* The *Mason* Court further stated that relevant factors for the district court to consider "would include those that demonstrate circumstances taking this particular case outside the realm of the ordinary DWLS case." *Id.*

Here, Coates's DWLS conviction constituted her second offense. Pursuant to MCL 257.904(3)(b), such an offense is punishable "by imprisonment for not more than 1 year or a fine of not more than $1,000.00, or both." DWLS is not a serious misdemeanor for purposes of MCL 769.5(3). See MCL 780.811(1)(a).[4] So, there was a rebuttable presumption that the trial court sentence Coates "with a fine, community service, or other nonjail or nonprobation sentence." MCL 769.5(3). Because the trial court departed from the presumptive sentence set forth in MCL 769.5(3) when it imposed a sentence of 93 days in jail, it was required to explain on the record "why the sentence imposed [was] more proportionate to the offense and the offender than a different sentence . . . would have been." *Lydic*, 335 Mich App at 500-501 (quotation marks and citation omitted).

At sentencing, the trial court acknowledged that it was imposing a departure sentence and appeared to explain the basis for the departure. The trial court prefaced its imposition of the departure sentence by observing that Coates had limited criminal history. The court then explained that it believed Coates was brainwashed by the sovereign citizen movement. It then referenced Coates's carrying a gun without a "permit," which it believed she could obtain if she wanted, and acknowledged that it was not sentencing her for that conduct but analogized it to driving without a license. The trial court emphasized that there was no likelihood that Coates would abide by the rules of society, and it could only punish her.

The trial court's statements arguably provide an explanation for why the trial court believed the departure sentence was more proportionate to Coates than the presumptive sentence would have been. But, the trial court failed to weigh the seriousness of the offense itself. As the *Mason* Court made clear, a trial court departing from the presumptive nonjail, nonprobation sentence set forth in MCL 769.5(3) must provide "an explanation of why the sentence imposed is more proportionate to the offense *and* the offender . . . ." *Mason*, ___ Mich App at ___; slip op at 5 (quotation marks and citation omitted; emphasis added). Put differently, why is a 93-day sentence appropriate, not just for Coates, but for driving without a license. Because the trial court failed to consider the proportionality of the sentence relative to the offense itself, the trial court did not adequately justify the departure sentence imposed. "If the Court of Appeals determines that [the] trial court has abused its discretion in applying the principle of proportionality by failing to provide adequate reasons for the extent of the departure sentence imposed, it must remand to the trial court for resentencing." *People v Steanhouse*, 500 Mich 453, 476; 902 NW2d 327 (2017).

## IV. ACQUITTED CONDUCT

Coates also argues that she is entitled to resentencing because the trial court erroneously considered her acquitted conduct (the CCW charge) when imposing the departure sentence, as evidenced by the trial court's and prosecutor's repeated references at sentencing to the CCW charge for which the jury acquitted Coates. We agree that the trial court erroneously considered

---

[4] The phrase "serious misdemeanor," as used in MCL 769.5(3), is defined in MCL 780.811. MCL 769.5(7). A DWLS charge is not included in the definition of serious misdemeanors set forth in MCL 780.811(1)(a).

Coates's acquitted conduct at sentencing, but in light of the error discussed in Part III, we cannot confidently conclude that this error standing alone entitles Coates to resentencing.

We generally review "constitutional claims under a de novo standard." *People v Brown*, 339 Mich App 411, 419; 984 NW2d 486 (2021). But because Coates did not raise her argument regarding the trial court's consideration of acquitted conduct during sentencing, in a motion for sentencing, or in a motion to remand, it is unpreserved. See *People v Anderson*, 322 Mich App 622, 634; 912 NW2d 607 (2018) ("To preserve a sentencing issue for appeal, a defendant must raise the issue at sentencing, in a proper motion for resentencing, or in a proper motion to remand filed in the court of appeals.").

We review unpreserved issues for plain error affecting a defendant's substantial rights. *People v Beesley*, 337 Mich App 50, 61; 972 NW2d 294 (2021). See also *People v Stokes*, 333 Mich App 304, 307; 963 NW2d 643 (2020) (applying plain-error analysis to an unpreserved issue involving consideration of acquitted conduct at sentencing). To obtain relief under the plain-error rule, a defendant must prove that (1) an error occurred, (2) the error was plain, which is to say obvious, and (3) the plain error affected their substantial rights—usually meaning that the error affected the outcome of the proceedings. *People v Davis*, 509 Mich 52, 67; 983 NW2d 325 (2022). If a defendant satisfies these three requirements, we must determine whether the plain error warrants reversal, in other words, whether it seriously affected the fairness, integrity, or public reputation of the judicial proceedings independent of the defendant's innocence. *People v Carines*, 460 Mich 750, 763-764; 597 NW2d 130 (1999). Sometimes identified as a fourth prong of plain-error analysis, this last step conceptually overlaps with the third prong. *Davis*, 509 Mich at 75-76.

Regarding the first and second prongs, we conclude that the trial court erred by considering acquitted conduct, and that error was obvious. The trial court improperly considered acquitted conduct: the CCW charge for which the jury acquitted Coates. "[D]ue process bars sentencing courts from finding by a preponderance of the evidence that a defendant engaged in conduct of which he was acquitted." *People v Beck*, 504 Mich 605, 629; 939 NW2d 213 (2019). Generally, acquitted conduct is conduct that "has been formally charged and specifically adjudicated by a jury." *Id*. at 620. Such conduct "is protected by the presumption of innocence" and "may not be evaluated using the preponderance-of-the-evidence standard without violating due process." *Id*. at 627. See also *People v Roberts (On Remand)*, 331 Mich App 680, 688; 954 NW2d 221 (2020), rev'd 506 Mich 938 (2020).

In *Beck*, 504 Mich at 629, our Supreme Court held that "reliance on acquitted conduct at sentencing is barred by the Fourteenth Amendment." "There must be some evidence in the record that the sentencing court relied on such information to warrant finding a *Beck* violation." *Stokes*, 333 Mich App at 311-312. A *Beck* violation is "apparent" if the "sentencing court specifically reference[s] acquitted offenses as part of its sentencing rationale . . . ." *Id*. at 312.

At sentencing, the trial court acknowledged that the jury acquitted Coates of the CCW charge and noted that it was not sentencing Coates on that charge. However, the trial court mentioned the CCW charge within its explanation for Coates's departure sentence, stating: "[T]here's no reason you can't follow the law. There's no reason even if you wanted to carry a gun you couldn't get the lawful permit to carry a gun, but you're not being sentenced on that." Although the trial court clarified that Coates was not being sentenced on the basis of the CCW

charge, it provided limited explanation as to the alternative rationale for its sentencing decision other than its agreement with the prosecution that there was "no likelihood" that Coates would follow the "rules of . . . society."[5] Rather, it compared Coates's perceived obstinance toward obtaining a driver's license to her unwillingness to obtain a concealed pistol license. The trial court's express agreement with the prosecution within its sentencing rationale is noteworthy because, during the sentencing hearing, the prosecutor repeatedly referenced the CCW charge in relation to Coates's chances of rehabilitation. Given the repeated references to Coates's CCW charge and the trial court's limited explanation for imposing the departure sentence, it appears that the trial court relied, at least in part, on acquitted conduct when imposing the departure sentence.

Nonetheless, the trial court's reliance on acquitted conduct during sentencing does not entitle Coates to resentencing under plain-error review because Coates has not established that the error affected her substantial rights. *Anderson*, 341 Mich App at 280-281. We reach this conclusion for two reasons. First, because the trial court provided such a limited explanation for the bases of its departure sentence, on this record, it is unclear whether the trial court would have imposed a different sentence absent its consideration of Coates's acquitted conduct relative to Coates's potential for rehabilitation. The trial court stated that it based its conclusion regarding Coates's likelihood of rehabilitation, at least in part, on Coates's testimony at trial. Second, because this error occurred in the context of the trial court's other error regarding the proportionality of the sentence in relation to the offense, we are not convinced that this error, as opposed to the error discussed in Part III, changed the outcome. Coates therefore cannot meet her burden of demonstrating that the trial court's error prejudiced her by affecting the outcome of sentencing. *Id*. Because we are remanding for resentencing on other grounds, the trial court can avoid committing such error during Coates's resentencing.

We vacate Coates's sentence and remand this matter to the trial court for resentencing consistent with this opinion. We do not retain jurisdiction.

/s/ Noah P. Hood

---

[5] Coates's testimony at trial regarding her future intentions to follow driving and licensure laws arguably supports this conclusion. At trial, Coates did not explicitly state that she would continue driving her car without a license. When asked if she would continue to drive a car, Coates stated: "I don't drive; I travel." Coates expressed the belief that "traveling" involves one's personal car and does not require a driver's license. However, Coates did not directly address whether she would *continue* to "travel." Coates testified that she was paying off tickets in an attempt to obtain her license and to clear her name. Coates further testified she would "probably" continue paying the tickets until she finished "studying," apparently referring to her independent research into United States Supreme Court precedent. Rather than explicitly stating that she would not obtain a driver's license, Coates stated that she would get her driver's license "if it's the right thing" for her to do once she finished studying. According to Coates, she was "not saying that [she was] not trying to obey the law or saying skip your laws or anything like that." Rather, she was "doing what [she] felt like is best for [her] or right for [her] and other people like [her]."