*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

CHRISTOPHER DWAYNE WILEY,

Defendant-Appellant.

UNPUBLISHED
September 10, 2025
10:32 AM

No. 371400
Wayne Circuit Court
LC No. 22-004452-01-FC

Before: ACKERMAN, P.J., and M. J. KELLY and O'BRIEN, JJ.

PER CURIAM.

Defendant, Christopher Wiley, appeals as of right his convictions, following a waiver trial, of assault with intent to commit murder, MCL 750.83; assault with a dangerous weapon (felonious assault), MCL 750.82(1); felon in possession of a firearm (felon-in-possession), MCL 750.224f(1); and two counts of carrying a firearm during the commission of a felony (felony-firearm), MCL 750.227b(1). For the reasons stated in this opinion, we affirm.

## I. BASIC FACTS

This case arises from Wiley's assault of Bershawnda McGee and Darrel Brown. McGee is the mother of Wiley's niece, and Brown is McGee's friend. On June 12, 2022, McGee traveled to Wiley's house in order to collect $500 from Wiley's brother. While she was waiting for Wiley's brother to arrive, she got into a verbal altercation with Wiley's stepmother. During the argument, Wiley told McGee that his stepmother was mad, that he was mad, and that McGee was on his "F'n property." In response, McGee got into her vehicle and drove to an "open space" near Wiley's house so that she could continue waiting for Wiley's brother to arrive. McGee and Wiley's brother were texting "back and forth" about the altercation with Wiley's stepmother. Eventually, McGee, who was irritated that she was being kept waiting, got out of her vehicle, walked to the front door of Wiley's house, and slathered barbecue sauce on his doorbell.

Wiley emerged from his house and started banging on the driver's side window of McGee's vehicle. McGee then struck Wiley with her vehicle, causing him to fall to the ground. She drove a few blocks away. She testified that she called the police and that, while she was waiting for them to arrive, she called a friend. McGee's friend drove to the area, got out, and started talking to

McGee, who was still in her vehicle. As they were talking, Wiley approached and asked what McGee's friend was doing in the area. Wiley also said, "I'm the murderer, I'm the murderer." Wiley's brother approached, and Wiley began recording using the camera on his cell phone. McGee told him to get away from her vehicle. Wiley then "swung inside" the vehicle and hit her in the eye. Wiley's brother intervened and "tussled" with Wiley. McGee's friend called the police and, after waiting 30 minutes for them to arrive, she decided to leave. She suggested that McGee do the same.

McGee, however, ended up talking to Brown, who suggested that they meet at a nearby location. When she arrived, she got out of her vehicle and talked with Brown, who was trying to console her about the earlier incidents. As they were talking, a man ran up the street. McGee identified the man as Wiley. She recalled that he had an object in his hand that he was pointing at them. McGee told Brown that the man was Wiley. As Wiley got closer, they saw that he had a gun. McGee ran to her vehicle and Brown fled on foot. McGee testified that Wiley said, "Bitch, Imma murder you." She started the car and was about to drive away when Wiley "ran after" Brown. McGee continued to drive away. Wiley then fired multiple shots at her vehicle as she was turning. Brown recalled hearing several shots from where he was hiding behind a dumpster. McGee's vehicle was hit multiple times. Additionally, McGee felt something strike her arm. Eventually, she realized that she had been shot in the arm and breast. She recalled that, around the time she was shot, she saw Wiley standing on the curb at a corner holding a gun in his hand.

McGee kept driving. After several minutes, Brown called her. He testified that McGee was crying and screaming that she had been shot. McGee ended up driving to a police station to report the shooting. While there, an officer applied a tourniquet to her arm. She was then transported to the hospital where she again identified Wiley as her assailant.

Following a bench trial, Wiley was convicted as indicated above. This appeal follows.

## II. SUFFICIENCY OF THE EVIDENCE

### A. STANDARD OF REVIEW

Wiley argues that there was insufficient evidence to sustain his conviction of assault with intent to murder. We review de novo a challenge to the sufficiency of the evidence. *People v Speed*, 331 Mich App 328, 331; 952 NW2d 550 (2020). "In examining the sufficiency of the evidence, this Court reviews the evidence in a light most favorable to the prosecutor to determine whether any trier of fact could find the essential elements of the crime were proven beyond a reasonable doubt." *Id*. (quotation marks and citation omitted). "The standard of review is deferential: a reviewing court is required to draw all reasonable inferences and make credibility choices in support" of the verdict. *People v Nowack*, 462 Mich 392, 400; 614 NW2d 78 (2000).

### B. ANALYSIS

"To prove assault with intent to murder, the prosecution must show (1) an assault, (2) with an actual intent to kill, (3) which, if successful, would make the killing murder." *People v Anderson*, 322 Mich App 622, 632; 912 NW2d 607 (2018) (quotation marks and citation omitted). Wiley argues that the prosecution failed to establish that he had the intent to kill. However, "[b]ecause of the difficulty in proving an actor's intent, only minimal circumstantial evidence is

necessary to show that a defendant had the requisite intent." *People v Stevens*, 306 Mich App 620, 629; 858 NW2d 98 (2014). Intent to kill may be inferred from all facts in evidence, including the fact that the defendant used a deadly weapon, aimed at the victim, and caused injury to the victim. *People v Everett*, 318 Mich App 511, 531 n 10; 899 NW2d 94 (2017).

Here, the record reflects that before the shooting there were escalating altercations between Wiley and McGee. They had a verbal altercation, which was followed by McGee vandalizing Wiley's property and striking him with her vehicle. Wiley then approached her at a nearby location, stating that he was the "murderer"[1] before punching her in the eye. McGee again left to a nearby area, and Wiley again approached her. This time he had a gun in his hand. He pointed the weapon at her, called her a "bitch," and said that he was going to kill her. He then fired his gun at her multiple times. McGee was shot in the arm and breast and there were several bullet holes in her vehicle. Brown's testimony that he heard multiple shots and shell casings recovered from the scene also corroborated that Wiley fired multiple times. Viewing the evidence in the light most favorable to the prosecution, there was sufficient evidence to establish that Wiley intended to kill McGee.

Wiley argues that, considering that McGee had earlier struck him with her vehicle, the shots fired at her car "would have been just as likely fired to stop the vehicle from running into him again." However, we are required to draw all reasonable inferences in favor of the verdict. See *Nowack*, 462 Mich at 400. And it is reasonable to infer that Wiley, who directly stated that he intended to kill McGee, fired multiple shots at her vehicle in order to do so. Wiley's sufficiency argument—which requires this Court to disregard the standard of review and instead view inferences that are contrary to the verdict—is without merit.

## III. INEFFECTIVE ASSISTANCE

### A. STANDARD OF REVIEW

Wiley next argues that his lawyer provided constitutionally ineffective assistance because he did not move to withdraw Wiley's waiver of a jury trial after the trial court granted the prosecution's motion to admit other-acts evidence against him. "When no *Ginther*[2] hearing has been conducted, our review of the defendant's claim of ineffective assistance of counsel is limited to mistakes that are apparent on the record." *People v Mack*, 265 Mich App 122, 125; 695 NW2d 342 (2005).

### B. ANALYSIS

To establish ineffective assistance by his lawyer, a defendant must show the lawyer's performance was objectively deficient and that the deficiencies prejudiced him. *People v Nix*, 301

---

[1] Wiley suggests that this comment was made because he had been previously convicted of murder, and that they did not show that he intended to kill McGee. However, viewed in the light most favorable to the prosecution, telling or reminding McGee that he was a "murderer" does not negate any intent that he had to kill her.

[2] *People v Ginther*, 390 Mich 436; 212 NW2d 922 (1973).

Mich App 195, 207; 836 NW2d 224 (2013). In order to establish prejudice, the defendant must show that, but for his lawyer's errors, "the result of the proceeding would have been different." *Id*. We presume that the defendant's lawyer provided effective assistance, and the burden is on the defendant to rebut the presumption. *People v Roscoe*, 303 Mich App 633, 644; 846 NW2d 402 (2014). "The defendant has the burden of establishing the factual predicate of his ineffective assistance claim." *People v Douglas*, 496 Mich 557, 592; 852 NW2d 587 (2014).

Here, Wiley waived his right to a jury trial. Thereafter, the prosecution moved for the admission of other-acts evidence against Wiley. The court granted the prosecution's motion, and the other-acts evidence was admitted at trial. Wiley now argues that his trial lawyer was ineffective because he did not seek to withdraw the waiver of his right to a jury trial after the court ruled the other-acts evidence was admissible. He contends that it is "very likely" that the court would have granted a motion to withdraw the waiver of his right to a jury trial. However, a lawyer's recommendation regarding the waiver of a jury trial is a matter of trial strategy. *People v Davenport (After Remand)*, 286 Mich App 191, 197; 779 NW2d 257 (2009). We will not substitute our "judgment for that of counsel on matters of trial strategy[.]" *Roscoe*, 303 Mich App at 644. Wiley suggests that withdrawal of his waiver of a jury trial was important because the other-acts evidence would have been better presented to a jury. He offers no rationale for why a jury would view the other-acts evidence more favorably than the trial court in a bench trial. Given the record in this case, Wiley has not shown that his lawyer provided ineffective assistance by not moving to withdraw Wiley's waiver of his right to a jury trial. Nor has he shown that, but for his lawyer's allegedly deficient performance, the outcome of the trial would have been different.

## IV. JUDICIAL BIAS

### A. STANDARD OF REVIEW

Wiley contends that he was denied a fair trial by the trial judge's bias. This issue is unpreserved because it was not raised in the trial court. See *People v Jackson*, 292 Mich App 583, 597; 808 NW2d 541 (2011). Our review, therefore, is for plain error affecting Wiley's substantial rights. See *id*.

### B. ANALYSIS

A criminal defendant's right to due process includes the right to appear before "a neutral and detached magistrate." *People v Loew*, 340 Mich App 100, 110; 985 NW2d 255 (2022) (quotation marks and citation omitted). Thus, "a judge should act neither as an advocate nor an adversary in any criminal proceeding . . . ." *Id*. "[C]oncern over the effect of the judge's comments and conduct" does not exist in cases tried without a jury. *In re Forfeiture of $1,159,420*, 194 Mich App 134, 153; 486 NW2d 326 (1992). Instead, in such cases, the defendant "must show that the trial judge's views controlled his decision-making process." *Id*.

Wiley points to two instances when the trial judge made rulings that were unfavorable rulings to him. First, the judge agreed with the prosecution that Wiley's lawyer was mischaracterizing a witness's testimony. Second, the judge agreed with the prosecution that Wiley's lawyer was arguing facts that had not been admitted into evidence during his closing argument. Wiley contends that the instances demonstrate judicial bias. However, judicial rulings

"are not themselves valid grounds for alleging bias unless there is a deep-seated favoritism or antagonism such that the exercise of fair judgment is impossible." *Jackson*, 292 Mich App at 597-598 (quotation marks and citation omitted). Wiley has not explained how the trial judge's rulings demonstrate bias; instead, he explains the reasons why he disagrees with the judge's conclusions. Even assuming that the court's rulings were erroneous, that fact does not establish judicial bias. See *Roscoe*, 303 Mich App at 647-648 (stating that "a trial judge's ruling regarding the admission of evidence, no matter how erroneous, is not grounds for disqualification"). Because there is no evidence that the trial judge's rulings were based upon any bias against Wiley, we conclude that Wiley has not shown plain error.

## V.  STANDARD 4 BRIEF

Finally, Wiley raises two additional arguments in a pro se supplemental brief filed pursuant to Supreme Court Administrative Order No. 2004-6, Standard 4. We address each in turn.

First, Wiley asserts that his trial lawyer provided ineffective assistance by failing to move for an adjournment in order to "identify and subpoena" two witnesses: "Shelly" and an unknown female 911 caller. Decisions regarding whether to seek an adjournment and whether to call witnesses are matters of trial strategy. *People v Rockey*, 237 Mich App 74, 76; 601 NW2d 887 (1999). Wiley asserts that the proposed witnesses' testimony would have discredited the testimony of McGee and Brown and shown that Wiley had acted in self-defense. However, McGee has not provided any documentation to show that these proposed witnesses were willing to testify at trial and what favorable testimony they would have provided. Absent such a showing, he cannot establish that he was prejudiced by his lawyer's failure to move for a continuance to identify and subpoena these proposed witnesses. See *Nix*, 301 Mich App at 207. See also *Douglas*, 496 Mich at 592 (stating that the defendant must establish the factual predicate for his claim).

Second, Wiley argues that his lawyer was ineffective for advising him against testifying and not calling him as a witness. It is clear from the record that Wiley and his lawyer extensively discussed whether Wiley should testify. The discussion included the "pros and cons" of deciding to testify. Although Wiley initially indicated to the court that he wished to testify, after further discussion with his lawyer, he exercised his right to not testify. Thus, it is reasonable to infer that Wiley's lawyer did, in fact, advise him not to testify. Beyond stating that his lawyer's advice was constitutionally deficient, Wiley has not explained the reason why it was deficient, nor how he was prejudiced by the allegedly deficient performance. As such, he cannot establish his claim for ineffective assistance. See *Nix*, 301 Mich App at 207.

Affirmed.

/s/ Matthew S. Ackerman
/s/ Michael J. Kelly
/s/ Colleen A. O'Brien