*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

JERRY JEROME BROWN-PEGUES,

Defendant-Appellant.

UNPUBLISHED
February 11, 2025
9:46 AM

No. 366983
Macomb Circuit Court
LC No. 2021-002826-FH

Before: BOONSTRA, P.J., and M. J. KELLY and MALDONADO, JJ.

PER CURIAM.

Defendant appeals by right his jury-trial conviction of third-degree criminal sexual conduct (CSC-III), MCL 750.520d(1)(b) (using force or coercion to accomplish sexual penetration), for which he was sentenced to serve 120 to 180 months' imprisonment. We affirm.

## I. BACKGROUND FACTS AND PROCEDURAL HISTORY

This case arises out of a sexual assault perpetrated at a Jimmy John's restaurant. Defendant and his victim were both employees at the Jimmy John's; defendant was a delivery driver, and the victim primarily made sandwiches. The victim was 17 years old at the time of the offense, but because of developmental disabilities, she had the cognitive capacity of a 12-year-old. The victim's daily routine involved arriving a little early, getting a soft drink from the front of the restaurant, and drinking her soft drink in the storage room while wearing headphones until her shift began. On the day of the crime, defendant and a store manager were the only other people present at the Jimmy John's while the victim was having her preshift beverage in the storage room. Defendant entered the storage room and asked the victim to perform fellatio on him, but she refused. He left the storage room and then later returned and forcibly pulled down the victim's pants and underwear. He then forcibly penetrated her vagina with his penis while she attempted to resist.

The manager then entered the storage room and caught defendant in the act. Initially believing that he caught the two of them engaging in consensual sexual activity, he left the room and called a superior to ask what to do. Upon learning that defendant had a prior conviction for CSC-III, the manager called the police. When the police arrived, defendant initially claimed to

have no idea what was happening. The police spoke to the victim, and she described the assault. Defendant denied having any sexual interactions with the victim, positing that she and the manager were conspiring to have him fired. The victim was taken to the hospital where she submitted to vaginal and cervical swabs and was given medication to prevent pregnancy and STIs. Defendant later admitted to having engaged in sexual intercourse with the victim but insisted that it was consensual.

Defendant was on parole for his prior CSC-III offense and, even though a few months elapsed before he was charged, he was returned to prison upon being arrested. Defendant ultimately decided to represent himself in this matter, and he filed numerous pretrial motions. Defendant filed a discovery motion demanding that the prosecution turn over the audio files from the police interactions with the victim on the day of the offense, and this motion was granted. A flash drive with the audio files was mailed to the prison but returned due to insufficient postage. The flash drive was mailed again, but the files were corrupt and defendant was unable to listen to them. Nevertheless, defendant did obtain these files months in advance of trial. Accordingly, defendant's motion to dismiss on the basis of discovery violations was denied. Defendant's motion to dismiss on the basis of a speedy trial violation was likewise denied. Defendant also filed a motion to dismiss in which he argued that the combination of numerous pretrial errors divested the court of its subject matter jurisdiction, and this motion was likewise denied.

Defendant was ultimately convicted as described earlier, and this appeal followed.

## II. DISCOVERY ISSUE

Defendant argues that a discovery violation warranting reversal occurred when he was not provided the recording of Officer Casbar's interview of the victim. We disagree.

 "We review a trial court's decision regarding the appropriate remedy for a discovery violation for an abuse of discretion." *People v Dickinson*, 321 Mich App 1, 17; 909 NW2d 24 (2017). "A trial court abuses its discretion if its decision falls outside the range of principled outcomes." *People v Guyton*, 511 Mich 291, 301; 999 NW2d 393 (2023) (quotation marks and citation omitted). "To obtain relief for a discovery violation, the defendant must establish that the violation prejudiced him or her." *Dickinson*, 321 Mich App at 17-18.

Discovery in criminal cases is governed by MCR 6.201. It is undisputed that defendant was entitled to discovery of relevant audio recordings pursuant to MCR 6.201(A)(2).[1] Regardless of fault, it is likewise undisputed that the prosecution failed to produce the recordings within 21 days of defendant's request, as required by MCR 6.201(F). The trial court is afforded considerable discretion when deciding how to remedy a discovery violation:

> If a party fails to comply with this rule, the court, in its discretion, may order the party to provide the discovery or permit the inspection of materials not previously disclosed, grant a continuance, prohibit the party from introducing in evidence the

---

[1] MCR 6.201(A)(2) requires discovery, upon request, of any "electronically recorded statements" of lay witnesses who might testify.

material not disclosed, or enter such other order as it deems just under the circumstances. Parties are encouraged to bring questions of noncompliance before the court at the earliest opportunity. Willful violation by counsel of an applicable discovery rule or an order issued pursuant thereto may subject counsel to appropriate sanctions by the court. An order of the court under this section is reviewable only for abuse of discretion. [MCR 6.201(J).]

The evidence established that the prosecution made a good-faith attempt to mail the relevant material within the required timeframe, but the material was returned due to insufficient postage. While the flash drive that ultimately did make it to the prison was not usable, there is nothing in the record suggesting that this was intentional. Further, defendant still obtained the material months in advance of trial. Therefore, the trial court did not abuse its discretion by declining to sanction the prosecution. Moreover, defendant is not entitled to obtain appellate relief without establishing prejudice, but he has not even suggested on appeal that his defense was impacted by the delayed discovery. Therefore, we conclude that this argument is without merit.

### III. EVIDENCE RELATED TO PRIOR CONVICTION OF CSC-III

Defendant argues that the trial court should not have allowed defendant's interview by police from his previous CSC-III case to be played for the jury. We disagree.

Evidentiary issues are reviewed for abuse of discretion. *People v Thorpe*, 504 Mich 251, 252; 934 NW2d 693 (2019). "The decision to admit evidence is within the trial court's discretion and will not be disturbed unless that decision falls outside the range of principled outcomes. A decision on a close evidentiary question ordinarily cannot be an abuse of discretion." *Id.* at 251-252 (quotation marks and citation omitted).

In criminal cases "in which the defendant is accused of an offense involving domestic violence or sexual assault, evidence of the defendant's commission of other acts of domestic violence or sexual assault is admissible for any purpose for which it is relevant, if it is not otherwise excluded under Michigan rule of evidence 403." MCL 768.27b(1). MRE 403 provides that relevant "evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." [2]

Defendant's argument mainly focuses on his contention that this was character evidence that painted him as a serial rapist. However, the Legislature specifically exempted this category of character evidence from the general prohibition when it enacted MCL 768.27b, so categorizing the interrogation video as character evidence does not impact its admissibility. Defendant concedes that this evidence was admitted pursuant to MCL 768.27b but emphasizes that such evidence remains subject to MRE 403. This limitation notwithstanding, defendant has not

---

[2] The Michigan Rules of Evidence were substantially amended on September 20, 2023, effective January 1, 2024. See 512 Mich lxiii (2023). We rely on the version of the Michigan Rules of Evidence in effect at the time of trial.

attempted to distinguish the prior offense from the current one such that the evidence of it would result in unfair prejudice. Defendant also argues that the video should have been excluded because it made him look like a liar. However, the Legislature has allowed admission of this sort of evidence "for any purpose for which it is relevant," MCL 768.27b(1), and evidence pertaining to the credibility of a party "is always relevant." *People v Spaulding*, 332 Mich App 638, 660; 957 NW2d 843 (2020).[3] The prosecution's theory at trial was that defendant lied to the police about a sexual assault, so evidence that defendant previously lied to the police about a sexual assault was an incredibly probative attack against his credibility.

For these reasons, the trial court did not abuse its discretion by admitting the video of defendant's interrogation from his prior CSC-III conviction.

## IV. SENTENCING ISSUES

## A. GUIDELINES

Defendant argues that the trial court erred by assessing 10 points for OV 3, 15 points for OV 10, and 10 points for OV 4. We disagree.

Criminal defendants are entitled to a sentence that is based on accurate information and accurate scoring of the sentencing guidelines. *People v McGraw*, 484 Mich 120, 131; 771 NW2d 655 (2009). A defendant is entitled to resentencing if a scoring error alters the defendant's recommended minimum sentence range under the guidelines. *People v Francisco*, 474 Mich 82, 89; 711 NW2d 44 (2006). The trial court's factual findings are reviewed for clear error and must be supported by a preponderance of the evidence. *People v Sours*, 315 Mich App 346, 348; 890 NW2d 401 (2016). "A sentencing court may consider all record evidence before it when calculating the guidelines, including, but not limited to, the contents of a presentence investigation report, admissions made by a defendant during a plea proceeding, or testimony taken at a preliminary examination or trial." *People v Johnson*, 298 Mich App 128, 131; 826 NW2d 170 (2012) (quotation marks and citation omitted). "Whether the facts, as found, are adequate to satisfy the scoring conditions prescribed by statute, i.e., the application of the facts to the law, is a question of statutory interpretation, which an appellate court reviews de novo." *Id*. (quotation marks and citation omitted).

## 1. OV 3

The trial court did not err by assessing 10 points for OV 3. "Offense variable 3 is physical injury to a victim." MCL 777.33(1). It is appropriate to assess 10 points for OV 3 when "[b]odily injury requiring medical treatment occurred to a victim[.]" MCL 777.33(1)(d). "[T]he administration of prophylactic medication to prevent pregnancy or disease following a sexual assault is sufficient by itself to require assessment of 10 points for OV 3." *People v Johnson*, 342 Mich App 90, 97-98; 992 NW2d 668 (2022). It is undisputed that the victim was given medication to prevent pregnancy and disease following the sentencing offense, so the court was bound to

---

[3] See also *People v Cameron*, 291 Mich App 599, 612; 806 NW2d 371 (2011) (stating that prior-bad-act evidence was admissible to establish credibility).

-4-

assess 10 points for OV 3. Therefore, defendant's argument that zero points should have been assessed for OV 3 is without merit.

## 2. OV 10

The trial court did not err when it assessed 15 points for OV 10. "Offense variable 10 is exploitation of a vulnerable victim." MCL 777.40(1). It is appropriate to assess 15 points for OV 10 if "[p]redatory conduct was involved" with the sentencing offense. MCL 777.40(1)(a). " 'Predatory conduct' means preoffense conduct directed at a victim . . . for the primary purpose of victimization." MCL 777.40(3)(a).

> To aid lower courts in determining whether 15 points are properly assessed under OV 10, [the Supreme Court] set forth the following analytical questions:
>
> (1) Did the offender engage in conduct before the commission of the offense?
>
> (2) Was this conduct directed at one or more specific victims who suffered from a readily apparent susceptibility to injury, physical restraint, persuasion, or temptation?
>
> (3) Was victimization the offender's primary purpose for engaging in the preoffense conduct?
>
> If the court can answer all these questions affirmatively, then it may properly assess 15 points for OV 10 . . . . [*People v Cannon*, 481 Mich 161-162; 749 NW2d 257 (2008).]

Assessing 15 points also requires "evidence that the victim was vulnerable, which means susceptible to injury, physical restraint, persuasion, or temptation." *People v Haynes*, 338 Mich App 392, 437; 980 NW2d 66 (2021).

There is no dispute that the victim, by virtue of her size and mental disabilities, was vulnerable. Instead, defendant argues that there was no evidence of preoffense conduct aimed at facilitating victimization. On appeal, the prosecution contends that defendant engaged in predatory conduct by waiting until the victim was alone in the storage room to perpetrate the assault. We agree with the prosecution's comparison to *People v Witherspoon*, 257 Mich App 329, 336; 670 NW2d 434 (2003), in which this Court emphasized timing and isolation:

> In the present case, the nine-year-old victim testified that . . . when no one else was present and she was folding clothes in the basement, defendant approached her and committed a sexual assault. We conclude that the *timing* of the assault (when no other persons were present) and its *location* (in the isolation and seclusion of the basement) are evidence of preoffense predatory conduct. . . . [I]t may be inferred from the evidence that defendant *watched* his victim and *waited* for any opportunity to be alone with her in an isolated location. On the basis of this evidence, the trial court's scoring of OV 10 at fifteen points for predatory conduct was not clearly erroneous.

In the present case, defendant timed the assault when the manager was the only other person in the building and committed the assault in the seclusion of the storage room. The evidence established that the victim arrived early for her shift every day and sat alone in the storage room. It is reasonable to infer, given that the pair had been working together, that defendant was familiar with this routine. It is also reasonable to infer that defendant intentionally timed the assault when he knew the victim was going to be alone in the storage room. Further, defendant is much larger than the victim, and she testified that he overpowered her as she attempted to escape. Therefore, the record suggests that defendant exploited the victim's susceptibility to physical restraint in order to keep her in the isolated location for the duration of the assault. Therefore, the record establishes predatory conduct, and it was appropriate to assess 15 points for this variable.

### 3. OV 4

The trial court did not err by assessing 10 points for OV 4.[4] This argument is unpreserved because it was not raised at sentencing, in a motion for resentencing, or in a motion to remand. See *People v Anderson*, 322 Mich App 622, 634; 912 NW2d 607 (2018). Accordingly, we review for plain error affecting substantial rights. *People v Anderson*, 341 Mich App 272, 279; 989 NW2d 832 (2022). "To avoid forfeiture under the plain error rule, three requirements must be met: 1) error must have occurred, 2) the error was plain, i.e., clear or obvious, 3) and the plain error affected substantial rights." *People v Carines*, 460 Mich 750, 763; NW2d 130 (1999). To establish that a defendant's substantial rights were affected, there must be "a showing of prejudice, i.e., that the error affected the outcome of the lower court proceedings." *Id*.

"Offense variable 4 is psychological injury to a victim." MCL 777.34(1). It is appropriate to assess 10 points for OV 4 if "[s]erious psychological injury requiring professional treatment occurred to a victim[.]" MCL 777.34(1)(a). When scoring OV 4, "the fact that treatment has not been sought is not conclusive." MCL 777.34(2). "[T]he trial court may assess 10 points for OV 4 if the victim suffers, among other possible psychological effects, personality changes, anger, fright, or feelings of being hurt, unsafe, or violated." *People v Lampe*, 327 Mich App 104, 114; 933 NW2d 314 (2019) (quotation marks and citation omitted). "However, the scoring of OV 4 cannot be based on the assumption that people *typically* suffer psychological injury when they are victims of the type of crime in question." *Id*. Furthermore, "while relevant, a victim's fear *during* the crime does not by itself justify the scoring of OV 4." *Id*. Seeking counseling is also a relevant consideration. *Id*.,

Defendant's argument that there was no evidence of a psychological injury is inconsistent with the record. The victim testified that the assault left her feeling angry and afraid. She cried several times that day and never returned to work at Jimmy John's, in part, out of fear. The victim's mother testified that the victim stopped going outside, refused to go anywhere by herself, and began isolating herself. The victim's mother reported to the agent who prepared the PSIR that the victim "stays in her room almost all day," does not want to find a new job, has become "very distrusting of her male family members," seems to be suppressing the trauma, and that she is

---

[4] Defendant raised this argument in his Standard 4 brief. See Administrative Order No. 2004-6, 471 Mich c, cii (2004).

seeking therapy for the victim. Therefore, the trial court did not err by assessing 10 points for OV 4.

## B. SORA

Defendant advances a strained argument in opposition to compliance with the registration requirements imposed pursuant to the Sex Offenders Registration Act, MCL 28.721. From what we can discern, defendant suggests that the imposition of the SORA registration requirement "has extended his maximum sentence." Defendant argues that this is impermissible because "[a] sentencing court's findings must not mandate an increase in the mandatory minimum or statutory maximum sentence." (Quotation marks and citation omitted.) Defendant cites caselaw stating that any fact increasing the statutory maximum must be found beyond a reasonable doubt by a jury.

There is a slew of problems with this argument. At the outset, this issue is arguably rendered moot because defendant is already bound for life by SORA's registration requirement on the basis of his prior CSC-III conviction.[5] See *People v Thue*, 336 Mich App 35, 39; 969 NW2d 346 (2021) ("An issue is moot when an event occurs that renders it impossible for the reviewing court to fashion a remedy to the controversy." (quotation marks and citation omitted)). More importantly, defendant's argument is based on the faulty premise that the registration requirement increased his maximum sentence. To the contrary, the Legislature expressly required that those convicted of CSC-III comply with SORA. MCL 28.725(13). Finally, defendant's argument is also based on the faulty premise that the court's imposition of the SORA requirement involved judicial fact-finding. The only fact that needs to be found to impose SORA registration was that defendant was convicted of a Tier III offense, MCL 28.725(13). The jury—not the court—found beyond a reasonable doubt that defendant was guilty of CSC-III, a Tier III offense. MCL 28.722(v)(*iv*). For these reasons, defendant's argument is without merit.

## V. DEFECTS WITH FELONY INFORMATION

Defendant argues that error warranting reversal occurred when the prosecution improperly filed an amended felony information adding a second-offense habitual offender notice. We disagree.

In support of this argument, defendant relies on MCL 769.13, which provides in relevant part:

> (1) In a criminal action, the prosecuting attorney may seek to enhance the sentence of the defendant as provided under section 10, 11, or 12 of this chapter, by filing a written notice of his or her intent to do so within 21 days after the defendant's arraignment on the information charging the underlying offense or, if

---

[5] MCL 28.722(v)(*iv*) (classifying CSC-III as a Tier III offense); MCL 28.725(13) (mandating that Tier III offenders register with SORA for life).

arraignment is waived, within 21 days after the filing of the information charging the underlying offense.

> (2) A notice of intent to seek an enhanced sentence filed under subsection (1) shall list the prior conviction or convictions that will or may be relied upon for purposes of sentence enhancement. The notice shall be filed with the court and served upon the defendant or his or her attorney within the time provided in subsection (1). The notice may be personally served upon the defendant or his or her attorney at the arraignment on the information charging the underlying offense, or may be served in the manner provided by law or court rule for service of written pleadings. The prosecuting attorney shall file a written proof of service with the clerk of the court.

Similar requirements can be found in MCR 6.112(F). "The purpose of the notice requirement is to provide the accused with notice, at an early stage in the proceedings, of the potential consequences should the accused be convicted of the underlying offense." *People v Head*, 323 Mich App 526, 543; 917 NW2d 752 (2018) (quotation marks and citations omitted).

Defendant's argument fails for two reasons. First, the statute defendant relies on does not apply in this case. When the prosecution amended the felony information, a second or subsequent conviction notice was added pursuant to MCL 750.520f(1), which provides: "If a person is convicted of a second or subsequent offense under section 520b, 520c, or 520d, the sentence imposed under those sections for the second or subsequent offense shall provide for a mandatory minimum sentence of at least 5 years." In other words, the prosecution never added a second-offense habitual offender enhancement pursuant to MCL 769.10. Instead, the notice was provided pursuant to MCL 750.520f(1). This is important because MCL 769.13 only applies to sentence enhancements pursuant to MCL 769.10 to 769.12. Therefore, defendant's reliance on MCL 769.13 is misplaced, and his argument lacks merit. Second, even if the prosecution had to comply with MCL 769.13, it did so. The statute requires the prosecution to provide notice of seeking the enhancement within 21 days of the arraignment on the information or 21 days after defendant waives a formal reading of the information. *Id*. Defendant waived formal reading of the original felony information at his arraignment on January 26, 2022. The prosecution filed the amended information, which contained the notice of seeking a sentence enhancement, on January 27, 2022. That was only one day later, so plainly it was fewer than 21 days. Therefore, even if defendant was correct about MCL 769.13(1) applying to the present case, the prosecution complied with it. Therefore, this argument fails for this reason as well. *Id*.

## VI. SPEEDY TRIAL VIOLATION

Defendant argues in his Standard 4 brief that the trial court violated his constitutional right to a speedy trial. We disagree.

"Whether a defendant was denied his constitutional right to a speedy trial is a mixed question of fact and law. We review trial court factual findings under the clearly erroneous standard." *People v Jones*, ___ Mich App ___, ___; ___ NW3d ___ (2024) (Docket No. 365590); slip op at 3 (quotation marks and citation omitted). "We review constitutional questions of law de novo." *Id*. (quotation marks and citation omitted).

The United States and the Michigan Constitutions both guarantee criminal defendants the right to a speedy trial. Us Const, Am VI; Const 1963, art 1, § 20; *People v Waclawski*, 286 Mich App 634, 665; 780 NW2d 321 (2009). In Michigan, this right is also protected by statute; MCL 768.1 provides that criminal defendants "are entitled to and shall have a speedy trial and determination of all prosecutions" and that the government must bring any case "to a final determination without delay except as may be necessary to secure to the accused a fair and impartial trial." Speedy trial claims are based on the amount of time elapsed between the date of the arrest and the date of the trial. *People v Williams*, 475 Mich 245, 261; 716 NW2d 208 (2006). This Court evaluates allegations of speedy trial violations by balancing the following four factors, which are known as the *Barker*[6] factors: "(1) the length of delay, (2) the reason for delay, (3) the defendant's assertion of the right, and (4) the prejudice to the defendant." *Id*. at 261-262. If the delay was 18 months or longer, "prejudice is presumed, and the burden shifts to the prosecution to show that there was no injury." *Id*. at 262. However, if the delay is less than 18 months then the burden is on defendant to show prejudice. *People v Rivera*, 301 Mich App 188, 193; 835 NW2d 464 (2013).

## A. LENGTH OF DELAY

The first factor is the length of the delay. "The time for judging whether the right to a speedy trial has been violated runs from the date of the defendant's arrest." *Rivera*, 301 Mich App at 193 (quotation marks and citation omitted). "A delay of more than eighteen months is presumed to be prejudicial and the burden is on the prosecution to prove lack of prejudice." *People v Simpson*, 207 Mich App 560, 563; 526 NW2d 33 (1994). "Under the *Barker* test, 'the presumptively prejudicial delay triggers an inquiry into the other factors to be considered in the balancing of the competing interests to determine whether a defendant has been deprived of the right to a speedy trial.' " *Williams*, 475 Mich at 262, quoting *People v Wickham*, 200 Mich App 106, 109-110; 503 NW2d 701 (1993). "[T]here is no set number of days between a defendant's arrest and trial that is determinative of a speedy trial claim." *Waclawski*, 286 Mich App at 665. When calculating the length of the delay, the relevant time period is from the time of arrest to the beginning of trial. *Id*. Defendant was arrested on August 15, 2020, but was not tried until January 24, 2023. This 29-month delay exceeds the threshold at which prejudice is presumed, so the rest of the analysis is triggered. See *Williams*, 475 Mich at 262.

## B. REASON FOR DELAY

The second factor requires consideration of the cause of the delay. "In assessing the reasons for delay, this Court must examine whether each period of delay is attributable to the defendant or the prosecution." *Waclawski*, 286 Mich app at 666. "Although delays inherent in the court system, e.g., docket congestion, are technically attributable to the prosecution, they are given a neutral tint and are assigned only minimal weight in determining whether a defendant was denied a speedy trial." *Williams*, 475 Mich at 263 (quotation marks and citation omitted). Lengthier delays are more tolerable for more complex cases. *Barker*, 407 US at 530-531.

---

[6] *Barker v Wingo*, 407 US 514; 92 S Ct 2182; 33 L Ed2d 101 (1972).

Defendant only makes one argument about the cause of the delay. According to defendant, the prosecution should be blamed for the delay because, although it claimed the delay was caused by the COVID-19 pandemic, the prosecution actually delayed defendant's trial in an overt attept to prejudice his defense and impair his civil rights. Defendant has not cited any evidence of this purportedly unlawful intent by the prosecution. Because defendant is the appellant in this case, he carries the burden of providing this Court with a factual record supporting his claim for reversal. *People v Elston*, 462 Mich 751, 762; 614 NW2d 595 (2000). His failure to do so is fatal to this argument. *Id*. As a result, defendant has effectively acknowledged the majority of the delay between his arrest and trial was caused by the COVID-19 pandemic. In *People v Smith*, ___ Mich App ___, ___; ___ NW3d ___ (2024) (Docket No. 362114); slip op at 5, this Court expressly held: "We follow the overwhelming weight of authorities and hold that delays caused by the COVID-19 pandemic are not attributable to the prosecution for purposes of a speedy-trial claim." As a result, "the reasons for delay do not support [defendant]'s speedy-trial claim." *Id*. at ___; slip op at 6.

## C. ASSERTION OF RIGHT

The third factor requires consideration of whether defendant asserted his right to a speedy trial during the proceedings below. *Williams*, 475 Mich at 261-262. Defendant asserted his right to a speedy trial in a January 6, 2022 motion. Accordingly, this factor weighs in favor of defendant's speedy trial claim.

## D. PREJUDICE

The fourth and most important factor to be considered is the prejudice. "There are two types of prejudice which a defendant may experience, that is, prejudice to his person and prejudice to the defense." *Williams*, 475 Mich at 264 (quotation marks and citation omitted). "Prejudice to his person would take the form of oppressive pretrial incarceration leading to anxiety and concern." *Jones*, ___ Mich App at ___; slip op at 5 (quotation marks and citation omitted). Prejudice to the person occurs every time a person is incarcerated. *Id*. "Prejudice to the defense is the more serious concern, because the inability of a defendant adequately to prepare his case skews the fairness of the entire system." *Williams*, 475 Mich at 264 (quotation marks and citation omitted). Examples of prejudice to the defense include loss of memory and deaths of witnesses. *Smith*, ___ Mich App at ___; slip op at 6.

Defendant's lengthy incarceration certainly caused personal prejudice, but he cannot establish prejudice to the defense. Defendant's sole argument on this point is that he was unable to obtain all the required documents to prepare for trial. A review of the record reveals the opposite. Indeed, although there were some hiccups in getting defendant evidence when he was in prison, he did eventually receive all of the requested material in advance of trial. Importantly, defendant has not identified the necessary documents that he did not have access to.

On balance, defendant cannot establish a speedy trial violation. The length of the delay and defendant asserting his right to a speedy trial weigh in favor of his speedy trial claim. However, the other two factors weigh heavily against defendant's claim. The reason for the delay

weighs in favor of the prosecution because most of it was caused by the COVID-19 pandemic, and defendant has failed to establish prejudice to his defense.

## VII. *BRADY* VIOLATION

Defendant argues in his Standard 4 brief that he is entitled to have his conviction reversed on the basis of a *Brady*[7] violation. We disagree.

Alleged *Brady* violations are reviewed de novo. *People v Christian*, 510 Mich 52, 75; 987 NW2d 29 (2022).

"[T]he suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." *People v Dimambro*, 318 Mich App 204, 212; 897 NW2d 233 (2016) (quotation marks and citation omitted). "To establish a *Brady* violation, a defendant must show that: (1) the prosecution has suppressed evidence; (2) that is favorable to the accused; and (3) that is material." *Christian*, 510 Mich at 76 (quotation marks and citation omitted). Materiality means "that there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. A 'reasonable probability' means a probability sufficient to undermine confidence in the outcome." *Id*. (quotation marks and citations omitted).

Defendant cannot establish any of the three elements of a *Brady* violation. First, defendant has failed to identify the evidence that was allegedly suppressed.[8] Defendant is most likely referring to the audio file of the police interview with the victim that the prosecution had difficulty delivering to the prison. If so, the first element is not met because this evidence was not suppressed; defendant was given this evidence well in advance of trial. The second element is not met because audio of an interview in which the victim accused defendant of sexual assault is not favorable to the defense. The third element is not met for the same reasons as the first two: the evidence was disclosed to the defense and an earlier disclosure would not have altered the trial's outcome.

For these reasons, defendant's *Brady* claim fails.

## VIII. JUDICIAL BIAS

Defendant's argument in his Standard 4 brief that he is entitled to reversal of his conviction because the trial judge was biased against him is plainly without merit. Defendant's argument is not premised on conduct before the jury creating the appearance of bias; rather, he alleges actual

---

[7] *Brady v Maryland*, 373 US 83, 87; 83 S Ct 1194; 10 L Ed 2d 215 (1963).

[8] "An appellant may not merely announce his position and leave it to this Court to discover and rationalize the basis for his claims, nor may he give only cursory treatment [of an issue] with little or no citation of supporting authority." *People v Matuszak*, 263 Mich App 42, 59; 687 NW2d 342 (2004). Providing an issue with only "cursory treatment constitutes abandonment of the issue." *Id*.

bias necessitating disqualification pursuant to MCR 2.003(C)(1)(a). "There is a strong presumption of judicial impartiality, and a party arguing otherwise bears a heavy burden to rebut this presumption." *People v Loew*, ___ Mich ___, ___; ___ NW3d ___ (2024); slip op at 19-20. In support of his claim of judicial bias, defendant cites "the numerous erroneous arbitrary actions of the entire district, circuit, court of appeals process throughout [this] case." However, "judicial rulings alone almost never constitute valid basis for a bias or partiality motion." *Cain v Dep't of Corrections*, 451 Mich 470, 496; NW2d 210 (1996) (quotation marks and citation omitted). Defendant does not cite any specific rulings or explain how these rulings are unique such that they demonstrate bias. Therefore, defendant has fallen far short of meeting his "heavy burden" to overcome the "strong assumption" that the trial judge was impartial. *Loew*, ___ Mich at ___; slip op at 19-20.

## IX. CONCLUSION

Defendant has failed to establish any errors with respect to his conviction or his sentence. The trial court did not err by declining to sanction the prosecution for its incidental discovery violation because the prosecution acted in good faith and because defendant received the relevant materials well in advance of trial. The trial court did not err by admitting evidence regarding defendant's prior CSC-III conviction because the evidence was authorized by statute and did not cause any unfair prejudice. The sentencing guidelines were properly scored, and the trial court did not engage in any fact-finding when it ordered SORA registration. There were no defects with the habitual offender notice in defendant's information. There was no speedy trial violation primarily because defendant has not established prejudice. Defendant cannot establish any of the elements of a *Brady* violation because no favorable evidence was suppressed. Finally, defendant has not put forth any evidence of judicial bias.

Affirmed.

/s/ Mark T. Boonstra
/s/ Michael J. Kelly
/s/ Allie Greenleaf Maldonado