*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

DIMARIO MARQUIS PARKER,

        Defendant-Appellant.

UNPUBLISHED
May 19, 2026
11:28 AM

No. 372765
Kent Circuit Court
LC No. 23-005677-FC

Before: WALLACE, P.J., and LETICA and FEENEY, JJ.

PER CURIAM.

Defendant appeals as of right his jury trial convictions for: (1) assault with intent to murder, MCL 750.83; (2) carrying a concealed weapon (CCW), MCL 750.227; and (3) carrying a firearm during the commission of a felony (felony-firearm), MCL 750.227b. The trial court sentenced defendant to serve: (1) 15 to 25 years, (2) 1 ½ to 5 years, and (3) 2 years in prison, respectively.[1] We affirm.

## I. FACTS

This case arises out of a driving altercation involving coworkers, which escalated when defendant shot Desmond Self five times.

Defendant and Self worked together and previously lived in the same apartment complex. In February 2023, Self filed a workplace-complaint about another coworker—defendant's friend— bringing a gun into the workplace. The workplace established a no weapons policy. Thereafter, defendant and two others filed complaints against Self for his "work etiquettes." The complaints against Self were found to be "unsubstantiated," and a meeting occurred between Self and the other complainants. Self and the other complainants resolved their differences, but defendant did

---

[1] Defendant's felony-firearm and CCW sentences were to be served concurrently, but his assault-with-intent-to-murder sentence was to be served consecutively to his felony-firearm sentence.

not participate. Self formally asked management to be moved to a different department so that he would be separated from defendant.

On April 28, 2023, defendant and Self left work at the same time, with defendant's vehicle directly ahead of Self's vehicle. Defendant and Self both drove to the apartment complex where Self lived.[2] Defendant claimed that Self was chasing him on their way to the apartment complex, which Self denied.[3] When defendant turned into the entrance of the apartment complex, he slammed on his brakes. Defendant claimed that Self's vehicle "tapped" his bumper; Self testified that he did not hit defendant's vehicle, but it was very close. Once defendant moved his vehicle forward, Self drove up next to defendant and rolled his window down. A verbal argument ensued, during which defendant asked why Self was following him, and Self responded that he was simply going home.

Self began to drive away, but because he saw defendant get out of his vehicle and begin "ranting," with his hands raised and waving, Self decided to reverse his vehicle back toward the incident so that he could hear what defendant was saying. Defendant starting shooting Self as Self was reversing and again when he was stationary. Self reacted and said: "[Y]ou just shot me . . . . [D]ude, I'm dying here, bro, can you at least call and get me some help?" Defendant responded by shooting Self and stating: "I am not to be f***ed with out here and quit f***ing playing with me."

At trial, defendant asserted that he shot Self in self-defense because he honestly believed that Self was attempting to reverse into him, and he feared for his life. Multiple eyewitnesses testified that they did not see Self attempt to strike defendant with his vehicle, but they did see defendant shoot Self. The jury found defendant guilty, and the trial court sentenced defendant, as stated earlier. Defendant now appeals.

## II. INEFFECTIVE ASSISTANCE OF COUNSEL

On appeal, defendant argues that defense counsel was ineffective for failing to investigate and provide evidence of Self's prior assaultive criminal history at trial. We disagree.

### A. PRESERVATION AND STANDARD OF REVIEW

Because defendant did not raise this issue in a motion for a new trial or evidentiary hearing filed in the trial court, or in a motion to remand for an evidentiary hearing filed in this Court, it is not preserved for appellate review. See *People v Abcumby-Blair*, 335 Mich App 210, 227; 966 NW2d 437 (2020); *People v Sabin (On Second Remand)*, 242 Mich App 656, 658; 620 NW2d 19 (2000). When a claim of ineffective assistance of counsel is not preserved, "our review is limited to errors apparent on the record." *People v Unger*, 278 Mich App 210, 253; 749 NW2d 272 (2008).

---

[2] Defendant claimed that he was heading to pick up his daughter from the bus stop that was located within the apartment complex.

[3] A detective testified that there were no reports of a vehicle chase or reckless driving on the day of the incident.

B. ANALYSIS

In *Strickland v Washington*, 466 US 668, 687; 104 S Ct 2052; 80 L Ed 2d 674 (1984), the United States Supreme Court established a two-prong test that a defendant must meet to prove that his or her counsel's assistance was so defective as to require a new trial. The test is as follows:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. [*Id*.]

Stated more simply, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 694. To show that a counsel's performance was deficient, a defendant "must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment." *Id*. at 690. "The court must then determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance." *Id*

Because there are countless ways to provide effective assistance in each case, courts "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Id*. at 689 (quotation marks and citation omitted). "Reviewing courts are not only required to give counsel the benefit of the doubt with this presumption, they are required to affirmatively entertain the range of possible reasons that counsel may have had for proceeding as he or she did." *People v Gioglio (On Remand)*, 296 Mich App 12, 22; 815 NW2d 589 (2012) (quotation marks and citation omitted), vacated in part on other grounds 493 Mich 864 (2012).

In this case, defendant argues that defense counsel failed to investigate and introduce evidence of Self's assaultive criminal history, which would have supported defendant's claim of self-defense. "The failure to reasonably investigate a case can constitute ineffective assistance of counsel." *People v Anderson*, 322 Mich App 622, 630; 912 NW2d 607 (2018). But because defendant offers no evidence in support of his assertion that defense counsel failed to investigate, "he has not established the factual predicate for his claim." *Id*.

Other-acts evidence is governed by MRE 404(b)(1), which states: "Evidence of any other crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." But "[w]hen a person's character or character trait is an essential element of a charge, claim, or defense, the character or trait may also be proved by relevant specific instances of the person's conduct." MRE 405(b). "The purpose of this evidence is to show the defendant's state of mind; therefore, it is obvious that

the victim's character, as affecting the defendant's apprehensions, must have become known to him, otherwise it is irrelevant." *People v Harris*, 458 Mich 310, 317; 583 NW2d 680 (1998).

In this case, there was no indication that defendant knew about Self's criminal history at the time of the incident. In fact, at trial, defendant admitted that he did not know whether Self owned or carried a gun, explaining, "We talked about cars, and houses, and stuff like that, never talked about guns and stuff like that." This acknowledgment suggests that defendant, who only worked with Self for less than two years, lacked knowledge regarding Self's approximately 20-year-old assaultive convictions. Because there is no indication that defendant was aware of Self's assaultive criminal history at the time of the incident, any evidence of such was irrelevant to defendant's state of mind when he shot Self. See *id*. Therefore, the evidence was inadmissible, and defense counsel was not ineffective for failing to advance a meritless argument. See *People v Thurmond*, 348 Mich App 715, 741; 20 NW3d 311 (2023).

Moreover, it is unlikely that evidence of Self's criminal history would have undermined the jury's confidence in defendant's guilt, considering that: (1) Self's assaultive criminal history occurred 20 years before the incident in this case; (2) video evidence showed defendant yelling outside Self's vehicle, instead of leaving or getting back into his own vehicle; (3) four eyewitnesses testified that they did not see Self attempt to strike defendant with his vehicle; and (4) three eyewitnesses testified that they saw defendant shoot Self after a verbal altercation. Accordingly, defendant has failed to establish prejudice. See *Strickland*, 466 US at 687.

### III. RIGHT TO PRESENT A DEFENSE

Defendant further argues that the trial court abused its discretion and violated his constitutional right to present a defense by denying defense counsel's access to specific jail calls that were reviewed by a detective. We disagree.

### A. PRESERVATION AND STANDARD OF REVIEW

Because this issue was raised, addressed, and decided by the lower court, it is preserved for appellate review. See *People v Metamora Water Serv, Inc*, 276 Mich App 376, 382; 741 NW2d 61 (2007). "A trial court's decision whether to admit or exclude evidence will be affirmed in the absence of a clear abuse of discretion." *People v King*, 297 Mich App 465, 472; 824 NW2d 258 (2012). "The trial court abuses its discretion when its decision is outside the range of principled outcomes." *Id*. "We review de novo the trial court's rulings on preliminary questions of law regarding the admissibility of evidence, such as the application of a statute or rule of evidence." *Id*. "A preserved trial error in admitting or excluding evidence is not grounds for reversal unless, after an examination of the entire cause, it affirmatively appears that it is more probable than not that the error was outcome determinative." *Id*. "Preserved nonstructural trial error of constitutional magnitude will not merit reversal if it is harmless beyond a reasonable doubt." *Id*. "Whether a defendant was denied his constitutional right to present a defense is a question of law we review de novo." *Id*.

### B. ANALYSIS

As an initial matter, defendant provides no legal authority to support this argument. "An appellant may not merely announce his position and leave it to this Court to discover and

rationalize the basis for his claims, nor may he give only cursory treatment with little or no citation of supporting authority." *People v Iannucci*, 314 Mich App 542, 545; 887 NW2d 817 (2016) (quotation marks and citation omitted). "The failure to brief the merits of an allegation of error constitutes an abandonment of the issue." *Id*. (quotation marks and citation omitted). Regardless, the trial court did not err in denying defense counsel's access to the jail calls because the minimally probative value of the evidence was substantially outweighed by undue delay and wasting time during trial.

"[A] criminal defendant has a state and federal constitutional right to present a defense." *People v Unger*, 278 Mich App 210, 250; 749 NW2d 272 (2008) (quotation marks and citation omitted). "Few rights are more fundamental than that of an accused to present evidence in his or her own defense." *Id*. at 249. Nevertheless, "an accused's right to present evidence in his defense is not absolute." *Id*. at 250. Defendant's "must still comply with established rules of procedure and evidence designed to assure both fairness and reliability in the ascertainment of guilt and innocence." *People v Yost*, 278 Mich App 341, 379; 749 NW2d 753 (2008) (quotation marks and citation omitted). "Accordingly, the right to present a defense extends only to relevant and admissible evidence." *People v Solloway*, 316 Mich App 174, 198; 891 NW2d 255 (2016) (quotation marks and citation omitted).

Evidence is relevant if "it has any tendency to make a fact more or less probable than it would be without the evidence," and "the fact is of consequence in determining the action." MRE 401. "The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." MRE 403. Further, "a court may exclude evidence that is repetitive, only marginally relevant, or poses an undue risk of harassment, prejudice, or confusion of the issues." *People v Orlewicz*, 293 Mich App 96, 101; 809 NW2d 194 (2011).

In this case, a detective testified that the first time that he heard defendant's claim—that Self was chasing him on their way to the apartment complex—was at trial. The detective explained that he had listened to a random "50 to 100" of defendant's jail calls,[4] and nowhere in those calls did he hear defendant discuss a chase. The detective acknowledged that he did not listen to all of defendant's jail calls and that the chase could have occurred. After the prosecution rested, defense counsel moved to receive access to the "50 to 100" jail calls that were reviewed by the detective to verify the detective's credibility. Each call was about 20 minutes long, and the detective informed the court that he "listened to at least 10 hours in the last two week[s] alone." The court denied defense counsel's request, explaining:

> And so at this point, I don't think that if it's just an issue of calling into question the credibility of the Detective who was not a fact witness, he didn't see anything, he just investigated. He's only reporting and essentially regurgitating what he's heard in the course of his investigation. If he were a person and we were relying upon him as a witness to this, but he wasn't there at the time that this

---

[4] Defendant made a total of 2,868 jails calls.

occurred. And so, I don't know that his—that—that the probative value of—the—any potential falseness of that particular statement regarding phone calls may be your client, I don't believe that it would be a good efficient use of time to take two or three, well if it's 20 minutes each, that's, you know . . . thousands of minutes . . . .

Defendant contends that the purpose for reviewing the jail calls was to impeach the thoroughness of the detective's investigation and to possibly discover and corroborate defendant's assertion that Self was chasing him. But the detective acknowledged that he did not listen to all of defendant's jail calls and that the chase could have occurred. The detective also indicated that he had spent over 10 hours listening to the calls in the past two weeks. Therefore, considering the time it would take for the detective to compile the "random" jail calls, and the time that it would take for defense counsel to review them, we conclude that the trial court did not err by determining that the minimally probative value of potentially impeaching the detective was substantially outweighed by precluding undue delay and wasting time. See MRE 403; *King*, 297 Mich App at 472.

## IV. INSUFFICIENT EVIDENCE

Defendant further argues that his constitutional due-process rights were violated because the prosecution presented insufficient evidence to negate defendant's claim of self-defense. We disagree.

## A. PRESERVATION AND STANDARD OF REVIEW

"Criminal defendants do not need to take any special steps to preserve a challenge to the sufficiency of the evidence." *People v Cain*, 238 Mich App 95, 116-117; 605 NW2d 28 (1999). We "review a challenge to the sufficiency of the evidence de novo." *People v Montague*, 338 Mich App 29, 44; 979 NW2d 406 (2021). "In determining whether sufficient evidence exists to sustain a conviction, this Court reviews the evidence in a light favorable to the prosecution," and considers "whether there was sufficient evidence to justify a rational trier of fact in finding guilt beyond a reasonable doubt." *People v Sherman-Huffman*, 466 Mich 39, 40; 642 NW2d 339 (2002) (quotation marks and citations omitted). "[T]he prosecutor need not negate every reasonable theory consistent with innocence." *People v Nowack*, 462 Mich 392, 400; 614 NW2d 78 (2000).

## B. ANALYSIS

"[A] conviction that is not supported by sufficient evidence to prove guilt beyond a reasonable doubt violates due process and cannot stand." *People v Prude*, 513 Mich 377, 384; 15 NW3d 249 (2024). "It is for the trier of fact, not the appellate court, to determine what inferences may be fairly drawn from the evidence and to determine the weight to be accorded those inferences." *People v Hardiman*, 466 Mich 417, 428; 646 NW2d 158 (2002). "[B]ecause of the difficulty of proving an actor's state of mind, minimal circumstantial evidence is sufficient." *People v Anderson*, 322 Mich App 622, 633; 912 NW2d 607 (2018) (quotation marks and citation omitted). "A jury is free to believe or disbelieve, in whole or in part, any of the evidence presented. The jury may choose to believe part of a witness's testimony and disbelieve another part of the same witness's testimony." *People v Baskerville*, 333 Mich App 276, 283-284, 963 NW2d 620

(2020) (quotation marks and citation omitted). "[O]nly the jury may determine the credibility of a witness or the weight to be afforded any evidence . . . ." *Id.* at 283.

Defendant does not contend that the prosecution presented insufficient evidence to establish the elements of the underlying crimes; rather, he argues that the prosecution did not negate the elements of self-defense beyond a reasonable doubt.

"Once a defendant raises the issue of self-defense and satisfies the initial burden of producing some evidence from which a jury could conclude that the elements necessary to establish a prima facie defense of self-defense exist, the prosecution must exclude the possibility of self-defense beyond a reasonable doubt." *People v Stevens*, 306 Mich App 620, 630; 858 NW2d 98 (2014) (quotation marks and citation omitted). As explained during the jury instructions, the use of deadly force in self-defense is appropriate when "[t]he individual honestly and reasonably believes that the use of deadly force is necessary to prevent the imminent death of or imminent great bodily harm to himself or herself or to another individual." MCL 780.972(1)(a).

In this case, defendant asserted that Self was following him; however, defendant admitted that he knew that Self lived at the apartment complex. More pertinently, defendant testified that he was "scared for [his] life" because he thought that Self was going to reverse and strike defendant with his vehicle. But that assertion is belied by the record. Self testified that he reversed "slow" because defendant was trying to tell him something, and Self could not hear him. Self explained that he looked out his rear window to ensure he did not harm defendant while reversing because Self was "not trying to hit [defendant] or anything." Four eyewitnesses also testified that they did not see Self attempt to hit or run defendant over with his vehicle. Moreover, multiple eyewitnesses described the initial altercation as "verbal," which defendant escalated when he shot Self multiple times—both while Self's car was reversing and again once it was stopped. Additionally, Self, as well as eyewitnesses, testified that while defendant was shooting Self, he shouted phrases such as: "I told you not to F with me," "I'm not to be f***ed with," and to "quit f***ing playing with me." The video played for the jury depicted Self's vehicle as stationary while defendant shouted outside his car. Accordingly, there was sufficient evidence for a factfinder to determine, beyond a reasonable doubt, that defendant did not honestly and reasonably believe that the use of deadly force was "necessary to prevent the imminent death of or imminent great bodily harm to himself . . . ." MCL 780.972(1)(a); see *Sherman-Huffman*, 466 Mich at 40.

Therefore, when viewed in the light most favorable to the prosecution, the prosecution presented sufficient evidence to negate defendant's theory of self-defense. See *Stevens*, 306 Mich App at 630.

Affirmed.

/s/ Randy J. Wallace
/s/ Anica Letica
/s/ Kathleen A. Feeney